No. 54,026

STATE OF KANSAS, *Appellant,* v. SANDRA KRISS, *Appellee.*

(654 P.2d 942)

Opinion filed December 3, 1982.

*John M. Duma,* assistant district attorney, ·argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellant.

*Charles S. Scott,* of Scott, Scott, Scott & Scott, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J:: The issue presented in this appeal is whether K.S.A. 17-1921 is constitutional. The defendant, Sandra Kriss, was charged with violation of that statute. Trial was held to the court, and after both parties had rested the court found the statute unconstitutional and discharged the accused. The prosecution brings the matter before us as a question reserved, pursuant to K.S.A: 22-3602(*b*)(3).

At the time the charges were filed, the defendant was the lessee of apartment No. 7, located at 8519 Parallel, Kansas City, Kansas. Electricity for the apartment was furnished by the· Board of Public Utilities (BPU) of Kansas City, Kansas. The electrical account was in the name of Paula Thornton, a friend of the

defendant. Apparently the two young women both maintained other residences, and used apartment No. 7 only for what is described by counsel as a "recreational refuge." The electrical account became delinquent in April 1981 and electrical service was terminated by the BPU.

On July 9, 1981, an agent for the BPU discovered that the meter for apartment No. 7 had been altered so that electricity would flow through without registering on the meter. The meter was equipped with a locking ring which prevented access to the meter; the ring could not be unlocked and removed without the use of a special key. The meter had not been damaged and the locking ring was locked and in place. Electric lights were seen turned on in the apartment at least twice after the service was terminated and once after the alteration of the meter was discovered.

The defendant was an employee in the delinquent accounts department of the BPU. At the time these charges were filed, she was serving as acting assistant supervisor, and as such she had access to the special key used for opening locking rings, although there was no direct evidence that she had actually had possession of such a key.

K.S.A. 17-1921 reads as follows:

"Any person who, without the consent of any person, firm or corporation (municipal or private) engaged in the manufacture, distribution and sale of electricity or electric current, shall make a connection of any wire, conduit or device, to any electric service line, or transmission line used to carry electricity by any person, firm or corporation furnishing electricity, or electric current, for public or private use, or shall deface, puncture, remove, reverse, or alter any electric meter, or the connections thereof, for the purpose of securing unmeasured electricity or electric current unlawfully, owned or used by any person, firm or corporation so engaged in the manufacture, distribution and sale of electricity, or electric current; or shall prevent any such meters from properly measuring or registering electricity, or electric current; or shall knowingly take, receive, use or convert to his own use, or the use of another, any electricity, or electric current, which has not been measured; or shall cause, procure, permit, aid or abet any person to do any of the aforesaid acts, shall be guilty of a misdemeanor and upon conviction, shall be punished by a fine of not more than one hundred dollars.

"The existence of any of the aforesaid connections of meters, alterations or use of unmeasured electricity, or electric current, shall be prima facie evidence of intent to violate, and of the violation of this act by the person, or persons, using or receiving the direct benefits from the use of the electricity, or electric current passing through such connections or meters, or being used unmeasured as aforesaid."

The trial court found that the final paragraph of this statute shifts the burden of proof to the defendant, and is therefore unconstitutional. Before examining that paragraph in detail, we should first review recent decisions which discuss the principles applicable to statutory presumptions. In *State v. Haremza,* 213 Kan. 201, 204, 515 P.2d 1217 (1973), we examined our worthless check statute, K.S.A. 1971 Supp. 21-3707, which contained a provision making evidence of certain facts prima facie evidence of intent to defraud and of knowledge of insufficient funds in the bank. We said:

"The general rule universally applied throughout the United States is that a statutory presumption will be upheld as constitutional if, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the fact proved and the one presumed; if the defendant has more convenient access to evidence relating to the fact to be presumed; and if, by requiring defendant to go forward with evidence to rebut the presumption, he is not thereby being subjected to unfairness or hardship. (Torcia, Wharton's Criminal Evidence, 13th Ed., Vol. 1, § 94.) This court recognized and followed the rule in *State v. Nossaman,* 107 Kan. 715, 193 Pac. 347, where the following language is used in the opinion:

" '. . . It is competent for the legislature to make proof of one fact *prima facie* evidence of another fact essential to the guilt of the accused, where the fact presumed has a fair relation to or some natural connection with the fact to be proven. (*The State v. Sheppard,* 64 Kan. 451, 67 Pac. 870; 12 C.J. 1205.) The term *prima facie* evidence carries the inference that such evidence may be rebutted and overcome, and notwithstanding the rule, an accused has the opportunity to submit his evidence and make a full defense. The verdict must rest upon all the evidence which must establish his guilt beyond a reasonable doubt. . . .' (p. 721.)" 213 Kan. at 204.

We recognized the distinction between conclusive and permissive presumptions, noting that "[i]n criminal cases conclusive presumptions have ordinarily been held unconstitutional on the basis that they invade the province of the jury and shift the burden of proof from the state to the defendant." 213 Kan. at 205. Permissive presumptions, on the other hand, are rebuttable; they do not require the jury to convict after the State has made a prima facie case. The jury is free to return a verdict in favor of the defendant even though he or she fails to introduce any evidence. Syllabi 2 and 3 in *Haremza* are instructive. They read:

"Statutory presumptions are rebuttable. A rebuttable statutory presumption only governs the burden of going forward with the evidence, and even when it operates against a defendant in a criminal case, it does not alter the ultimate

burden of proof resting upon the prosecution, nor deprive the defendant of the benefit of the presumption of innocence." Syl. ¶ 2.

"A statutory presumption will be upheld as constitutional if, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the fact proved and the one presumed; if the defendant has more convenient access to evidence relating to the fact to be presumed; and if, by requiring defendant to go forward with evidence to rebut the presumption, he is not thereby being subjected to unfairness or hardship." Syl. ¶ 3.

*Haremza* echoes several United States Supreme Court statements on statutory presumptions in criminal statutes. In *Tot v. United States,* 319 U.S. 463, 87 L.Ed. 1519, 63 S.Ct. 1241 (1943), the court considered the validity of a presumption in the Federal Firearms Act and concluded that the statute did not meet the following test:

"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts." 319 U.S. at 467-468.

See also *United States v. Romano,* 382 U.S. 136, 139, 15 L.Ed.2d 210, 86 S.Ct. 279 (1965); *Leary v. United States,* 395 U.S. 6, 33-34, 23 L.Ed.2d 57, 89 S.Ct. 1532 (1969).

The most recent statement of the Supreme Court which we find on the subject appears in *Ulster County Court v. Allen,* 442 U.S. 140, 60 L.Ed.2d 777, 99 S.Ct. 2213 (1979). There the court held that a New York statute's presumption that all occupants of a car in which firearms are present are in illegal possession of the weapons did not violate due process. The Supreme Court discussed the distinctions between permissive and conclusive or mandatory presumptions. It said:

"The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. See, *e.g., Barnes v. United States,* [412 U.S.] at 840 n. 3. In that situation the basic fact may constitute prima facie evidence of the elemental fact. See, *e.g., Turner v. United States,* 396 U.S. 398, 402 n. 2. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. *E.g., Barnes v. United States, supra,* at 845; *Turner v. United States, supra,* at 419-424. See also *United States v. Gainey,* 380 U.S. 63, 67-68, 69-70. Because this permissive presumption leaves the

trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

"A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." 442 U.S. at 157.

K.S.A. 17-1921 provides that the existence of certain facts "shall be prima facie evidence of intent to violate, and of the violation of this act . . . ." It does not *require* the trier of fact to find one fact upon proof of another. The trier of fact is free to accept or reject the inference based upon all of the circumstances shown by the evidence.

We discussed prima facie evidence in *Haremza,* where we said:

"We have defined *prima facie* evidence as evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence. (*Van Brunt, Executrix v. Jackson,* 212 Kan. 621, 512 P.2d 517.) A *prima facie* evidence provision is nothing more or less than a rule of evidence which governs the sufficiency of the evidence to take the case to the jury." 213 Kan. at 206.

The statute which we now consider creates, under these standards, a permissive and not a conclusive or mandatory presumption. The trier of fact is free to consider all of the circumstances shown by the evidence, regardless of by whom it is introduced, and to make the ultimate factual determination.

Thus we must examine K.S.A. 17-1921 according to the test stated in *Haremza.* Is there a natural and rational connection between the facts proved and the facts presumed? We conclude that there is. The alteration of an electric meter so that electrical current will flow through the meter without registering serves to benefit only one person—the occupant of the premises served by the electric line. Such alteration of an electric meter will, while the alteration is operative, effectually provide the occupant of the premises with free electricity. It is not likely that one who would receive no benefit would alter an electric meter, unless at the

request of the person whose premises were being served; and it is also unlikely that the person who is receiving free electricity does not know that such is the fact—and why. Certainly all of these suggestions may be erroneous; but they are logical and likely. We conclude that there is a natural and rational connection between the facts proved and the facts which may be presumed under the statute.

Does the defendant have more convenient access to evidence relating to the fact to be presumed? The facts proven, alteration of the electric meter in this case, establish prima facie evidence of intent to violate, and of the violation of this act. Certainly the defendant has more convenient access as to evidence relating to intent than does the State. Finally, requiring the defendant to rebut the presumption or go forward with the evidence is not unfair or burdensome. It is not mandatory; defendant is not required to introduce any evidence. But if the defendant has evidence that she has subleased the apartment to another or that the defendant has not occupied the premises during the critical period or that the first time the defendant had knowledge that something was wrong was on a certain date when no billing was received from the utility, it would not be unfair to suggest that the defendant produce such evidence.

We conclude that K.S.A. 17-1921 is constitutional and that the trial court erred in its ruling.

The State's appeal is sustained.