20 Kan. App. 2d 665 (1995)
In the Interest of J.L. and D.L.
No. 71,913
Court of Appeals of Kansas.
Opinion filed March 10, 1995.
Robert E. Diehl, of Hays, for the appellant.
Thomas J. Drees, assistant county attorney, and Robert T. Stephan, attorney general, for the appellee.
Willis K. Musick, of Hays, guardian ad litem.
Before PIERRON, P.J., GERNON and LEWIS, JJ.
LEWIS, J.:
D.L.C. is the natural mother of J.L. and D.L. Her parental rights to these children were terminated by the trial court. She appeals from that decision.
The facts on which the trial court based its severance of D.L.C.'s parental rights are not extensive. On February 6, 1986, D.L.C.'s parental rights to another child were terminated. The 1986 severance took place in the same trial court and before the same judge who presided in the instant matter. As its only proof in these proceedings, the State introduced a certified copy of the 1986 order terminating D.L.C.'s parental rights. The State offered no other evidence. The State argued that the evidence entitled it to a presumption of unfitness under K.S.A. 1994 Supp. 38-1585(a)(1). The trial court agreed and additionally took judicial notice of "several cases" in which at least two other children of *667 D.L.C. had been found to be children in need of care. The "several cases" referred to by the court are not identified by case number, and apparently no formal proof was made concerning those proceedings. In any event, the trial court concluded the State was entitled to a presumption of unfitness under K.S.A. 1994 Supp. 38-1585(a)(1) and (3). It found that as a result of the presumption of unfitness provided by the statute, "the burden of proof is on the respondent, [D.L.C.], to present evidence to rebut the presumption that she is an unfit parent." D.L.C. did attempt to rebut that presumption and presented evidence in support of her position. The trial court held that D.L.C. had failed to rebut the presumption and terminated her parental rights to the children in question. Thus, D.L.C.'s parental rights were terminated upon a showing that her parental rights to another child were terminated eight years previously.
SEVERANCE AS TO D.L.
For reasons which are not relevant, D.L.C.'s rights to D.L. were terminated before D.L. had been adjudged to be a child in need of care. All parties to this appeal agree that D.L. has never been adjudicated a child in need of care. This failure requires that we reverse the termination as to D.L.
K.S.A. 1994 Supp. 38-1583 provides in part: "(a) When the child has been adjudicated to be a child in need of care, the court may terminate parental rights." This court has held that "a child in need of care adjudication is required to terminate parental rights." In re D.V., 17 Kan. App.2d 788, 790, 844 P.2d 752, rev. denied 252 Kan. 1092 (1993).
The State concedes that the failure to determine D.L. to be a child in need of care is fatal to the termination order as to D.L. The guardian ad litem asks us to declare that a child in need of care determination is not necessary but cites no authority to support his position. The position of the guardian ad litem is without merit.
The order terminating D.L.C.'s parental rights is reversed, and this matter is remanded as to D.L. for appropriate action to determine if she is a child in need of care.
*668 CONSTITUTIONALITY OF K.S.A. 38-1585(a)(1) and (3)
D.L.C. argues that the presumption of unfitness provided for in K.S.A. 1994 Supp. 38-1585(a)(1) and (3) is an unconstitutional violation of her due process rights under the Fourteenth Amendment to the United States Constitution. We agree that the statute as construed and applied in this case violated the procedural due process rights of the natural mother.
K.S.A. 1994 Supp. 38-1585 provides in relevant part:
"(a) It is presumed in the manner provided in K.S.A. 60-414 and amendments thereto that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes by clear and convincing evidence that:
(1) A parent has previously been found to be an unfit parent in proceedings under K.S.A. 38-1581 et seq. and amendments thereto, or comparable proceedings under the laws of another state, or the federal government;
....
(3) on two or more prior occasions a child in the physical custody of the parent has been adjudicated a child in need of care as defined by subsection (a)(3) of K.S.A 38-1502 and amendments thereto;
....
"(b) The burden of proof is on the parent to rebut the presumption. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall now terminate the parent's parental rights in proceedings pursuant to K.S.A. 38-1581 et seq. and amendments thereto."
Ultimately, we believe that the reference to K.S.A. 60-414 is of vital importance, and that analysis will follow. For the time being, we focus only on the manner in which the presumption was applied by the trial court. This case presents a factual situation wherein D.L.C. was declared to be unfit in 1994 because she was declared to be unfit in 1986. The question presented to this court is whether an eight-year-old adjudication may constitutionally shift the burden of proof from the State to the mother. We have examined the record, and there was no effort in this case to compare the 1986 facts with the 1994 facts. No consideration was given to the fact that the 1986 proceeding did not involve the same children who were the subject of the 1994 proceeding. In fact, the State was permitted to carry its entire burden *669 of proof simply by introducing a certified copy of the termination journal entry from 1986.
The question involved in this case is whether the procedural due process rights of the natural mother were violated. The term procedural due process is defined by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 332, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976): "Procedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."
The Supreme Court in Mathews went on to describe the process by which courts may judge whether an individual's right to procedural due process has been violated:
"These decisions underscore the truism that "`[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). `[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. [Citations omitted.] More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Emphasis added.) 424 U.S. at 334-35.
The Mathews test has been adopted, approved, and applied by the appellate courts of this state. See In re Cooper, 230 Kan. 57, 67, 631 P.2d 632 (1981); In re J.L.D., 14 Kan. App.2d 487, 490, 794 P.2d 319, rev. denied 247 Kan. 704 (1990).
Procedural due process operates to place restraints on governmental actions which deprive individuals of "liberty" or "property" interests. The first question we must determine is whether the interest involved in this case is a liberty or property interest.
Our appellate decisions place the issue beyond question: "Kansas recognizes that the parent's rights of custody and control of *670 their children are liberty interests protected by the Fourteenth Amendment Due Process Clause." In re J.J.B., 16 Kan. App.2d 69, Syl. ¶ 1, 818 P.2d 1179 (1991). See In re Cooper, 237 Kan. 57, Syl ¶ 1.
"A natural parent's right to the custody of his or her children is a fundamental right protected by the Fourteenth Amendment to the Constitution of the United States which may not be disturbed by the State or by third persons absent a showing the natural parent is unfit." (Emphasis added.) In re Guardianship of Williams, 254 Kan. 814, Syl. ¶ 1, 869 P.2d 661 (1994).
"When the State seeks to terminate the relationship between a parent and child, it must do so by fundamentally fair procedures that meet the requisites of due process." In re J.L.D., 14 Kan. App.2d at 490. See Santosky v. Kramer, 455 U.S. 745, 752-54, 71 L.Ed.2d 599, 102 S.Ct. 1388 (1982). Procedural due process certainly is required in parental termination cases. The question is whether the presumption of unfitness, as applied in this case, violates the concept of procedural due process. In reaching that decision, we must apply the Mathews balancing test. Our Supreme Court has provided guidance in In re Cooper, 230 Kan. 57, Syl. ¶ 2: "A determination of the safeguards necessary to afford constitutional due process must be evaluated in the light of the nature of the proceeding and of the interests affected."
The court went on to say:
"In deprived child cases, the State possesses its parens patriae interest in protecting its minor children and providing them with proper care. State ex rel. O'Sullivan v. Heart Ministries, Inc., 227 Kan. 244, 253, 607 P.2d 1102 (1980). The parents' interest is in the maintenance of the integrity of the family unit (Beebe v. Chavez, 226 Kan. 591, 597, 602 P.2d 1279 [1979]), and the preservation of the parent-child relationship (In re Brehm, 3 Kan. App.2d at 327-28). In deprived child proceedings, the parent is subjected to the possibilities of temporary or permanent deprivation of the custody of the child and destruction of the family unit." 230 Kan. at 61.
Later, the court said:
"In interpreting the due process clause of the Constitution, the United States Supreme Court has established that certain interests cannot be foreclosed without meeting certain procedural safeguards. A determination of the safeguards necessary to afford constitutional due process must be evaluated in the light of *671 the nature of the proceeding and of the interests affected, Mathews v. Eldridge, 424 U.S. 319, 334-35, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976).
"The extent to which procedural due process must be afforded a person is influenced by the extent to which the person affected may be `condemned to suffer grievous loss' and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Goldberg v. Kelly, 397 U.S. 254, 262-63, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970)" 230 Kan. at 67.
Whether process is due under a certain circumstance is a question of law (Jones v. Marquez, 526 F. Supp. 871, 878 [D. Kan. 1981]) over which this court's review is unlimited. Hutchinson Nat'l Bank & Tr. Co. v. Brown, 12 Kan. App.2d 673, 674, 753 P.2d 1299, rev. denied 243 Kan. 778 (1988).
The first factor in applying the Mathews balancing test is to consider the private interests that will be affected by the official action. In this case, the private interest affected is the parent's right to the custody and control of her natural children. This is a right which is well protected under our system of government. The legislature has recognized this fact in requiring that proof of unfitness in parental termination cases must be made by evidence that is clear and convincing. K.S.A. 1994 Supp. 38-1583(a). Our Supreme Court has decided that the right of a parent to the custody and control of his or her children takes precedence over the "best interests" of the child where the dispute is between a parent and a third party. In re Guardianship of Williams, 254 Kan. at 826-27. Indeed, other than the right to personal freedom, there may be no private right valued more highly or protected more zealously by the courts than the right of a parent to the custody and control of his or her children. It follows that in the balancing test, the private rights affected by governmental action are very significant and are entitled to the highest protection from unwarranted governmental action.
The next issue in the Mathews balancing test is the risk of error from the procedures employed and the probable value of substitute procedural safeguards. In our judgment, this case presents a question of the risk of error inherent in employing an uncontrolled presumption of unfitness versus the standard procedure of requiring the State to prove that unfitness. We consider the *672 risk of error in employing the presumption of unfitness, as it was used in this case, to be much too high.
The rule of law and the function of the judiciary exists, in many instances, to protect citizens from unwarranted governmental intrusion into their personal lives. If we value and protect the right of a parent to the control and custody of his or her children, we should not make it too easy for the government to intervene and terminate the parent/child relationship. To permit the government to terminate that relationship by relying on a journal entry filed in an eight-year-old termination procedure makes the process much too easy on the part of the government. We see no good reason to excuse the government from the task of proving unfitness by clear and convincing evidence. To do so will not place the children at risk since the government has available a rather summary procedure to remove the children from an abusive home pending the ultimate determination of parental unfitness.
The statutory presumption as employed in this case was apparently not weakened or reduced by the passage of time. There is not time limit stated in the statute, and no concession to that element appears to have been considered by the trial court. In essence, we have a result which says that because D.L.C. was adjudged unfit eight years ago, she remains unfit today. There was no effort to determine what conditions existed in 1986 and whether they still existed in 1994. We can imagine termination caused by the effects of drug and alcohol abuse which would become irrelevant if the mother and/or father or both are, eight years later, clean and sober. However, the presumption as it was employed in this case assumes that conditions have not changed in eight years. If they have changed, the burden of proving such a change is placed on the mother. We do not believe presumptions derived from eight-year-old lawsuits should shift the burden of proof in parental termination cases.
A comparison of the resources available to the State and to the parent places the parent at an extreme disadvantage. To allow a presumption of unfitness to be employed as it was in this case only magnifies that disadvantage. The net result is an unacceptable risk that a parent judged unfit many years ago will erroneously *673 be adjudged unfit today for no other reason than a presumption based on the result in a case which has become irrelevant.
In this state, we do not allow a defendant to be convicted of burglary upon proof that he was convicted of that crime eight years ago. We would not permit a finding of negligence to stand if it were based on nothing more than an eight-year-old prior adjudication of negligence. In neither instance would we permit a showing of a prior conviction of a crime or a prior adjudication of negligence to shift or change the burden of proof. Why should the issue of unfitness be treated any differently?
As a general rule, if we are going to use a prior adjudication to someone's disadvantage, we restrict that adjudication to an event which occurred in a stated number of years. For instance, we restrict prior DUI convictions to those occurring within the past five years before increasing the penalty for a similar conviction. Convictions occurring more than five years ago are irrelevant in DUI cases. K.S.A. 1994 Supp. 8-1567(k)(3). Certain criminal convictions can be expunged in three or five years, depending on the crime involved, and disappear from one's record. K.S.A. 1994 Supp. 21-4619. Possession of a firearm is a crime if one is convicted of a felony within five years preceding that violation. However, if the felony conviction is more than five years old, it is not a crime to possess a weapon, notwithstanding a prior felony conviction. K.S.A. 1994 Supp. 21-4204. It is unlawful to possess or sell explosives to a person who has been convicted of a felony in the past five years. K.S.A. 1994 Supp. 21-4209; K.S.A. 1994 Supp. 21-4209a. These are but a few examples of statutes which place limits on how long a past indiscretion or crime will affect a citizen. In the face of these examples, the presumption of unfitness will spring into being upon proof of a prior termination that is 8, 10, or even 20 years old. There is no statutory time limit on how old a prior termination must be before it becomes irrelevant. A prior termination is relevant and raises a presumption of unfitness for as far back as we can find records to prove it. It does so regardless of how irrelevant it may have become with the passage of time.
*674 The risk of erroneous action posed by this presumption, as it was employed in this case, is significant. For all the rhetoric which may be used to prove that such a presumption does not change the burden of proof, as a practical matter it does. The State may not deprive a citizen of liberty by doing nothing more than filing proof of a prior conviction. The State may, however, terminate parental rights by doing nothing more than filing proof of a prior termination. Once this is done, parental rights will be terminated unless the unfortunate parent can convince the trial court that he or she is no longer unfit. In the context in which this presumption operates, it may just as well change the burden of proof because that burden is shifted from the State with all of its resources to a parent who has little, if any, resources in comparison.
In 1983, we said:
"It was likewise error for the court to cast upon respondent the duty to prove her fitness. This the court effectively did when it erroneously admitted the final report, for without that report in evidence the only proof of respondent's unfitness would be earlier reports and orders. As stated previously, the earlier findings were conclusive of the conditions at those earlier times, but they would not relieve the State of the burden of proving that such earlier conditions still existed on May 28, 1982." In re Reed, 8 Kan. App.2d 602, 608, 663 P.2d 675 (1983).
To paraphrase the decision in In re Reed, the termination of February 1986 was conclusive of the conditions existing at that earlier time. In this case, unlike Reed, that presumption did relieve the State of the burden of proving that such earlier conditions still existed in April 1994. The burden was shifted to D.L.C. to prove that the earlier conditions no longer existed.
The substitute procedural safeguards which can be employed to eliminate the possibility of error are relatively simple. We could require the State to prove its case without the benefit of the presumption as employed in this case. This procedure would reduce the risk of error, readjust the parties' relative resources, and ensure that the State cannot terminate a parental relationship without proving by clear and convincing evidence that the parent is currently unfit as to the child involved in the termination proceedings. It would eliminate a presumption which rests on the *675 premise that since a mother was unfit as to a different child eight years ago, she remains unfit as to another child today.
Finally, Mathews requires that we consider the government's interest and the burdens the substitute procedural safeguards might impose. There is no question but that the government's parens patriae interest in protecting minor children is substantial and of great importance. State ex rel. O'Sullivan v. Heart Ministries, Inc., 227 Kan. 244, 253, 607 P.2d 1102 (1980). We also have no doubt that this power may be adequately exercised and protected without the benefit of an unfettered presumption of unfitness. It does not place an unacceptable administrative or fiscal burden on the government to require that it prove unfitness by real, relevant, and recent facts to terminate a parent/child relationship.
"The extent to which procedural due process must be afforded a person is influenced by the extent to which the person affected may be `condemned to suffer grievous loss' and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Goldberg v. Kelly, 397 U.S. 254, 262-63, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970)." In re Cooper, 230 Kan. at 67.
In the context with which we deal, we conclude, without hesitation, that the grievous loss suffered by a parent from the termination of the parent/child relationship greatly outweighs the government's interest in a summary adjudication.
It seems clear to us that the balancing test of Mathews demonstrates that as applied in this case, the presumption of unfitness, provided by K.S.A. 1994 Supp. 38-1585(a)(1) and (3), violated the procedural due process rights of the mother of J.L. and D.L.
In Stanley v. Illinois, 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972), the Supreme Court of the United States dealt with an Illinois statutory presumption that declared all unwed fathers to be unfit without providing for a hearing on that issue. In declaring the procedure unconstitutional, the court said:
"Despite Bell and Carrington, it may be argued that unmarried fathers are so seldom fit that Illinois need not undergo the administrative inconvenience of inquiry in any case, including Stanley's. The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes *676 higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.
"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.
"Bell v. Burson held that the State could not, while purporting to be concerned with fault in suspending a driver's license, deprive a citizen of his license without a hearing that would assess fault. Absent fault, the State's declared interest was so attenuated that administrative convenience was insufficient to excuse a hearing where evidence of fault could be considered. That drivers involved in accidents, as a statistical matter, might be very likely to have been wholly or partially at fault did not foreclose hearing and proof in specific cases before licenses were suspended.
"We think the Due Process Clause mandates a similar result here. The State's interest in caring for Stanley's children is de minimis if Stanley is shown to be a fit father. It insists on presuming rather than proving Stanley's unfitness solely because it is more convenient to presume than to prove. Under the Due Process Clause that advantage is insufficient to justify refusing a father a hearing when the issue at stake is the dismemberment of his family." 405 U.S. at 656-58.
In this action, the State has insisted on "presuming rather than proving" unfitness. The mere fact that such a procedure may be more convenient and less burdensome does not justify the existence of the presumption.
We hold that the presumption as applied in this case was a violation of the procedural due process rights of the natural mother.
K.S.A. 60-414
We have indicated that we believe that 38-1585(a)(1) and (3) is unconstitutional as applied in the instant matter. We emphasize the terminology that it is unconstitutional as it was applied in this case. We do not hold the statute itself is unconstitutional.
Our standard of review in cases involving the constitutionality of a statute has been often quoted:
"[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to *677 construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." Boatright v. Kansas Racing Comm'n, 251 Kan. 240, 243, 834 P.2d 368 (1992).
"This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." State v. Durrant, 244 Kan. 522, 534, 769 P.2d 1174, cert. denied 492 U.S. 923 (1989).
We concede that our duty is to construe the statute in such a manner that it is constitutional. The question is whether we can do so with K.S.A. 1994 Supp. 38-1585. We believe that we can, and, in approaching that issue, we depart from our usual procedure on appeal. The issue which will be discussed in this portion of our opinion was not raised by either party to this appeal. This court is duty bound to raise it on our own to comply with our above-quoted standards of review.
In this case, the trial court appears to have overlooked that portion of K.S.A. 1994 Supp. 38-1585(a) which provides: "It is presumed in the manner provided in K.S.A. 60-414 and amendments thereto." (Emphasis added.) We believe that K.S.A. 60-414, if construed properly, provides a basis on which the presumption may be constitutionally applied. K.S.A. 60-414 provides as follows:
Subject to K.S.A. 60-416, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed facts is upon the party against whom the presumption operates; (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."
If the presumption provided for by K.S.A. 1994 Supp. 38-1585 is employed in conjunction with K.S.A. 60-414, it can be applied in a manner consistent with due process. 60-414 provides for two presumptions. A subsection (a) presumption is derived from facts *678 which have probative value as proof of the presumed facts. A subsection (a) presumption places the burden of proving the nonexistence of the presumed fact on the party against whom it operates. In this case, the presumption of unfitness was treated as a subsection (a) presumption, and the burden was placed upon D.L.C. to prove she was no longer unfit. Under the facts of this case, that presumption violated her procedural due process rights.
A subsection (b) presumption arises from facts which have no probative value as evidence of the presumed fact. When any evidence of the nonexistence of the presumed fact is introduced, the subsection (b) presumption evaporates and the case proceeds as if it had never existed. In this case, for instance, if D.L.C. had taken the stand and given her uncorroborated testimony that she was no longer unfit, the presumption would have disappeared, and the burden of proving unfitness would have reverted to the State.
We discussed K.S.A. 60-414 in the case of State v. 1978 Chevrolet Automobile, 17 Kan. App.2d 144, 150-52, 835 P.2d 1376 (1992):
"K.S.A. 1991 Supp. 65-4135(a)(6) states that the presumption raised in that statute is governed by K.S.A. 60-414 and amendments thereto. K.S.A. 60-414 has in the past proven to be somewhat of an enigma. See McMurry v. Crawford, 3 Kan. App.2d 329, 594 P.2d 1109 (1979). Under the facts of this case, we find no mystery in the application of the statute. .. .
....
"In this case, claimants argue that the trial court erroneously applied 60-414(a), whereas it should have applied 60-414(b). Such error, claimants argue, caused the trial court to misapply the burden of proof to their detriment. We do not agree.
"We hold that K.S.A. 60-414(a) was applicable to the facts shown by the record. The application of subsection (a) or subsection (b) depends on whether the facts from which the presumption is derived have any `probative value as evidence of the existence of the presumed fact.' If they do have probative value, subsection (a) applies. If they do not, then subsection (b) applies.
"`Probative evidence is evidence that tends to prove an issue; it furnishes, establishes or contributes toward proof.' State ex rel. Hausner v. Blackman, 7 Kan. App.2d 693, 698, 648 P.2d 249 (1982), aff'd 233 Kan. 223 (1983). See Akin v. Estate of Hill, 201 Kan. 306, 311, 440 P.2d 585 (1968).
"In analyzing the issue raised by claimants, we first note the statute provides that subsection (a) applies if there is any probative evidence of the presumed *679 fact. As a result, we are not required to consider the nature or weight of the evidence; our only question is whether the evidence is probative of the presumed fact. If the presence of a controlled substance in close proximity to the money is probative of the fact that the money is drug related, the presumption is a subsection (a) presumption. It is not relevant whether the evidence shows five pounds or 1.6 grams of the substance. The statute raises the presumption on the showing of any probative evidence, and we are not required to quantify that evidence. We conclude that the statute is rather liberal in raising a presumption and that no particular amount of probative evidence is required to do so. The following comments are instructive:
"`This court must assume that the Kansas Supreme Court is familiar with Kansas statutory law, and that it does not fashion its holdings in derogation to the intent of the Kansas elected branches. Fortuitously, the court need not accept defendant's implicit invitation to reconsider the Wooderson decision for the Kansas Supreme Court, because it finds defendant's argument to be based upon the erroneous assumption that this presumption comes within subsection (b) of the statute. Under subsection (a), a presumption derived from evidence that itself has any probative value is not eliminated simply because some evidence contrary to the presumed fact is introduced. Kansas as well as federal law provides that evidence having any tendency in reason to establish a material fact has probative value. [Citations omitted.] ...
"`The court finds that evidence of an inadequate warning easily meets the liberal test for probative value under the Kansas and federal rules. It must be borne in mind that evidence need not establish a fact, by any standard of proof, for it to have probative value. All that is required is that it have any tendency to make the existence of the fact more probable than it would be without the evidence. [Citation omitted.] And the clear language of K.S.A. § 60-414(a) directs that presumptions created by evidence having any probative value in establishing the presumed fact continue to exist notwithstanding the introduction of "some" contrary evidence.' Mason v. Texaco Inc., 741 F. Supp 1472, 1506 (D. Kan. 1990).
"In the instant matter, evidence of a controlled substance in close proximity to the money is certainly some probative evidence of the presumed fact. The `close proximity' evidence has a tendency to make the existence of the presumed fact more probable than it would be without such evidence. We are of the opinion that the Legislature, in enacting 65-4135(a)(6), intended that the close proximity of cash to a controlled substance is probative evidence that the cash is drug related. We reject the argument that a presumption would be raised based on evidence which is not probative of the presumed fact. Accordingly, we have no hesitation in concluding that the presumption raised by K.S.A. 1991 Supp. 65-4135(a)(6) is a subsection (a) presumption under K.S.A. 60-414."
In this case, the trial court made no effort to determine whether the presumption provided by K.S.A. 1994 Supp. 38-1585 *680 was a subsection (a) or subsection (b) presumption. This was reversible error and led to our conclusion that the presumption as applied was unconstitutional. It also fails to recognize the significance of K.S.A. 60-414, which is an integral part of the establishment of the statutory presumption in 38-1585.
Our decision that the statutory presumption as applied in this case was unconstitutional was largely based upon the fact that there is no time limitation stated in the statute. In this case, the presumption was based upon a conclusion which was eight years old and probably irrelevant. We do not believe and do not hold that evidence of a prior termination of parental rights can never raise a constitutional presumption. If, for instance, the presumption is based upon facts which still exist and involve a close sibling of the child involved in the current proceeding, it may indeed be based upon probative evidence of the presumed fact. In this case, it was based on facts that were eight years old; there was no showing that those eight-year-old facts were still relevant, and, in essence, the presumption was based upon another time and another family.
If we construe 38-1585 as requiring the trial court to determine whether the presumption is either a subsection (a) or subsection (b) presumption, then it may be constitutionally applied. A finding that the presumption is based on facts which are relevant and probative of current unfitness will allow the presumption to be employed in a constitutional manner. In State v. Haremza, 213 Kan. 201, 204, 515 P.2d 1217 (1973), our Supreme Court stated the rule governing the constitutionality of statutory presumptions:
"The general rule universally applied throughout the United States is that a statutory presumption will be upheld as constitutional if, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the fact proved and the one presumed; if the defendant has more convenient access to evidence relating to the fact to be presumed; and if, by requiring defendant to go forward with evidence to rebut the presumption, he is not thereby being subjected to unfairness or hardship. (Torcia, Wharton's Criminal Evidence, 13th Ed., Vol. 1, § 94.)"
See State v. Price, 233 Kan. 706, 710, 664 P.2d 869 (1983); State v. Kriss, 232 Kan. 301, 303, 654 P.2d 942 (1982); State v. Smith, *681 223 Kan. 192, 194, 573 P.2d 985 (1977); State v. Nossaman, 107 Kan. 715, 721, 193 Pac. 347 (1920).
A subsection (a) presumption, in our judgment, is one which is not only based on facts which have probative value as evidence of the existence of unfitness, but it is a presumption which is consistent with the test stated in State v. Haremza. A presumption of this nature would comport with procedural due process.
We hold that in order for the presumption raised by K.S.A. 1994 Supp. 38-1585 to be applied in a constitutional fashion, the trial court must first determine whether it is a subsection (a) or subsection (b) presumption. If it is determined to be a subsection (b) presumption, any evidence which would support a finding of fitness, including the uncorroborated testimony of a parent, will result in the disappearance of the presumption, and the burden of proving unfitness will once again be upon the State. If it is determined by the trial court to be a subsection (a) presumption, it will operate in the fashion described in the statute.
The determination of whether the presumption is a subsection (a) or subsection (b) presumption is a question of law on which there is unlimited appellate review.
In determining whether a presumption is a subsection (a) or (b) presumption, we suggest the trial court consider the following factors: (1) the passage of time between the earlier order of termination and the current proceeding; (2) whether the same children or siblings of those children were involved in the earlier proceeding; (3) whether the father or fathers of the children involved are the same persons involved in the prior proceeding; (4) whether the facts on which the earlier presumption is based bear any resemblance to the current factual scenario; (5) whether the circumstances surrounding the presumption are such that, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the facts proven in the earlier action and the facts alleged to be true in the current action; (6) whether the parent has more convenient access to evidence relating to the unfitness to be presented; and (7) whether, by requiring the parent to go forward with the evidence to rebut the *682 presumption, he or she is thereby being subjected to unfairness or hardship.
Trial courts are invited to consider other relevant factors since our list is not suggested nor intended to be exclusive. The court should give a detailed analysis of all the factors explaining the reasons for its decision. A conclusory determination that unfit once means unfit always will not be accepted.
We hold that if that statute is construed in the manner suggested, it will not violate procedural due process.
In this case, we hold that as a matter of law, D.L.C.'s due process rights were violated by the manner in which the presumption of unfitness was employed. We also conclude that, as a matter of law, an eight-year-old determination proceeding results in a subsection (b) presumption which was rebutted by D.L.C. We reverse the termination of D.L.C.'s parental rights to J.L. and remand for a new hearing consistent with this opinion. In the event D.L. is found to be a child in need of care, proceedings to terminate D.L.C.'s parental rights as to D.L. may also be conducted in the manner specified by this opinion.
Reversed and remanded.
PIERRON, J., concurring:
I concur in the result. I fully agree that insufficient evidence to prove unfitness was presented. In addition, I believe the statute in question cannot be reasonably modified to meet constitutional muster. The purpose of K.S.A. 1994 Supp. 38-1585 is clear. It would create a presumption of parental unfitness, and a concomitant basis for severance of parental rights, out of certain previous judicial findings of difficulties in parenting. The court's opinion very thoroughly details the difficulties with this approach and attempts to save the statute with a major reworking of it. My difficulty with the court's action is that after the court's reworking, there is no presuming left in the presumption.
The court details what needs to be shown for the "presumption" to survive in any meaningful way. Essentially, the party seeking the presumption must prove the probative value of the previous findings by demonstrating, through a presentation of the *683 underlying facts behind the judicial findings, the weight and relevance of the previous findings as they apply to the current case. While this is obviously the appropriate procedure from a constitutional standpoint, it completely eliminates any meaningful status as a presumption of the earlier findings. Without such a foundation, the presumption is so insubstantial as to hardly bear discussion.
To avoid confusion, we should simply say this attempt to create a presumption out of evidence that may have little weight or relevance is violative of our due process protections. As the court noted, we are dealing with a very important natural right of parents. Although we have approved numerous procedural and evidentiary reforms to make the resolution of claims of parental unfitness more efficient, this change goes too far and unfairly shifts the burden of proof to the parent to prove fitness.