NOT DESIGNATED FOR PUBLICATION

No. 114,034

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:

CH.W., R.W., and CA.W.

MEMORANDUM OPINION

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Opinion filed February 12, 2016. Affirmed.

*Jill R. Gillett*, of Chanute, for appellant natural father.

*Jerry B. Hathaway*, county attorney, for appellee.

*Charles H. Apt III*, of Apt Law Office, LLC, of Iola, guardian ad litem.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: The Father of Ch.W., R.W., and Ca.W. appeals the district court's order terminating his parental rights to these three children. The mothers of the children had their rights terminated at the same time. Ca.W.'s mother appealed, and we decided her appeal separately. The mother of Ch.W. and R.W. did not appeal. With respect to Father's appeal, we affirm the district court for the reasons discussed below.

Father had five children born of two separate women. Father married his first wife, Mary, in 1998. They had two children together, Ch.W. (born in 2001) and R.W. (born in 2005). Father and Mary divorced in 2007. Shortly thereafter Father married Hayley, and they had three children together: K.W. (born in 2007), B.W. (born in 2008), and Ca.W.

1

(born in 2010). K.W. and B.W. were previously adjudicated children in need of care (CINC) in 2008. Ch.W. was previously adjudicated a CINC in 2011. This appeal pertains to Ch.W., R.W., and Ca.W.

In April 2012, the State petitioned the district court under K.S.A. 2011 Supp. 38-2234 to have Ch.W., R.W., and Ca.W. declared to be CINCs. This was the third CINC proceeding involving Father's children. The district court determined that Ch.W., R.W., and Ca.W. should be removed from Father's home because an emergency existed which threatened their safety. In awarding temporary custody to Social and Rehabilitation Services (SRS) (now Department of Children and Families), the district court noted the children's ages, several allegations of abuse, physical bruising of the children, volatility of the parental relationship, and prior SRS involvement and placement with the parents and family. In May 2012, Ch.W., R.W., and Ca.W. were adjudicated to be CINCs. The district court ordered the children to remain in SRS custody.

Between June 2012 and February 2014, the district court held several review hearings. Notably, the district court held a permanency hearing in October 2012. At that hearing, the district court found reintegration into Father's care was no longer a viable option based on allegations of sexual abuse. The court also ordered there be no contact between Father and the children. Mother was permitted supervised visitation.

On February 25, 2014, the district court held another permanency hearing. Based on the evidence presented at that hearing, the district court determined that reintegration was no longer a viable option for the two mothers and instructed the State to prepare a termination motion with regard to all three parents.

On February 4, 2015, the district court held a termination hearing. The children's cases were consolidated for the purpose of the hearing. The district court took judicial

notice of the court files associated with the children's cases, including the transcript of the February 2014 permanency hearing.

According to the testimony, beginning in October 2012, Ca.W. attended weekly counseling sessions with Rhoda Schwindt, a mental health therapist with Family Counseling Center in Iola. Ca.W. was only a little over 2 years of age, but Schwindt used an approach called "play therapy" with Ca.W., in which she played with him and modeled appropriate behaviors and responses. In those sessions Ca.W. exhibited severe anger and disruptive behaviors and was hypervigilant to stimuli. These behaviors were not characteristic of a child of Ca.W.'s age. Ca.W.'s behavioral issues improved over time. By early 2013, Ca.W. showed signs of becoming less anxious and stressed.

In October 2013, Father had a supervised visit with Ca.W. at a park. In the therapy session that followed, Ca.W. exhibited several regressive behaviors and seemed to take a step back in his therapy. He was very distressed and overactive in trying to keep his foster parents' attention. In an uncharacteristic manner he repeatedly expressed his desire that they not leave him at the counseling session with Schwindt.

R.W. also attended individual therapy following his removal from Father's care. In March 2013, KVC referred R.W.'s case to Barry Plumlee, a mental health clinician with Crawford County Mental Health. R.W. was 8 years old at the time.  At a counseling session in November 2013, R.W. told Plumlee that Father sexually abused him. Although reluctant at first, R.W. described in detail an instance of Father's sexual abuse. R.W. specifically identified Father, using his first name. R.W. also suggested that his brother, Ch.W., had sexually abused him. R.W. was not able to provide a specific date of the abuse but indicated it had occurred on 20 occasions.

Over the course of therapy with Plumlee, R.W. did not identify any other perpetrators, such as his mother's boyfriends, and his description of the details remained

3

consistent. When Plumlee revisited the topic, R.W.'s demeanor noticeably changed. Normally, R.W. was very active, but when Father's name was mentioned, R.W. would become visibly uncomfortable and less active and would try to divert attention away from the subject.

R.W. told Plumlee that he did not want visitation with Father and wanted to never live with him again. Plumlee believed that R.W. would suffer substantial regression in his therapy if visitation was permitted or if Father was provided custody of R.W. According to Plumlee, based on R.W.'s accounts of sexual abuse, Ch.W. and Ca.W. were also at risk for sexual abuse.

Father denied sexually abusing the children. He claimed it was Mary's boyfriends who sexually abused R.W. But he admitted that he and Hayley caught Ch.W. sexually abusing R.W. Hayley claimed that Father was innocent and that she and Father had reported to the Garnett police an incident of sexual abuse by one of Mary's boyfriends, but we have no record of any such police report in the record on appeal.

The district court terminated Father's parental rights, finding he was presumptively unfit under K.S.A. 2015 Supp. 38-2271 and unfit under the statutory factors set forth in K.S.A. 2015 Supp. 38-2269. In doing so, the district court determined father's unfitness was unlikely to change in the foreseeable future and concluded that it was in the children's best interests to terminate Father's parental rights.

On appeal Father claims: (1) evidence favorable to his case was withheld from the district court and the parties; (2) insufficient evidence existed to support the district court's termination of his parental rights; and (3) the district court failed to serve process on the children's grandparents as required by K.S.A. 2015 Supp. 38-2267.

4

*Withheld Evidence*

Father claims the county attorney, investigators, and caseworkers withheld evidence from the district court and the parties. He concedes this issue was not raised before the district court but asks us to consider it for the first time on appeal.

As a general rule, an appellate court will not consider claims raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Kansas law recognizes several exceptions to the general rule, including:

> "(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case; (2) questions raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision." *In re S.D.*, 41 Kan. App. 2d 780, 787, 204 P.3d 1182 (2009).

A litigant who wishes to raise an issue for the first time on appeal must affirmatively invoke an exception and explain why the issue is properly before the appellate court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant's brief to include:

> "The arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. *If the issue was not raised below, there must be an explanation why the issue is properly before the court.*" (Emphasis added.)

A litigant ignores Rule 6.02(a)(5) "at [his] own peril." 301 Kan. at 1043. Failure to comply with the rule risks a finding that the issue is improperly briefed and, therefore, deemed waived and abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). In *Williams*, the Kansas Supreme Court cautioned future litigants that the rule would be strictly enforced. 298 Kan. at 1085. In *Godfrey*, the court reiterated its ruling in *Williams* and declared, "[w]e are now sufficiently post-*Williams* that litigants have no excuse for noncompliance with Rule 6.02(a)(5)." *Godfrey*, 301 Kan. at 1044.

Here, Father's brief does not comply with Rule 6.02(a)(5). Although he acknowledges that he is raising this issue for the first time on appeal, Father does not affirmatively invoke an exception to the general rule. Father does not otherwise make any attempt to explain why his claim is properly before us. The appellate brief of the children's guardian ad litem argued that this issue had not been properly preserved for appeal, but Father failed to offer any explanation in a reply brief as to why we should entertain his claim. Thus, this issue has been waived and abandoned.

*Sufficiency of the Evidence*

Father argues that the evidence is insufficient to support the district court's decision terminating his parental rights. Under K.S.A. 2015 Supp. 38-2269(a), when a child has been adjudicated a CINC, the district court may terminate a parent's rights if the moving party establishes by clear and convincing evidence that "the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." If the district court finds the parent unfit, the court must then determine whether termination of parental rights is in the child's best interests. K.S.A. 2015 Supp. 38-2269(g)(1).

In considering this issue we review the district court's decision to determine "whether, after review of all the evidence, viewed in the light most favorable to the State,

[we are] convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do not reweigh conflicting evidence, determine the credibility of the witnesses, or redetermine questions of fact. 286 Kan. at 705.

As the trier of fact, the district court was in the best position to determine the best interests of a child, and we will not disturb the district court's judgment on this point absent an abuse of the district court's discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009).

*Presumption of Unfitness*

Father challenges the district court's finding that he was presumptively unfit. K.S.A. 2015 Supp. 38-2271 sets forth a number of alternative bases upon which the district court can presume that a parent is unfit. Among those alternatives, the district court may presume that a parent is unfit

> "if the state establishes, by clear and convincing evidence, that:
>
> . . . .
>
> '(3) on two or more prior occasions a child in the physical custody of the parent has been adjudicated a child in need of care as defined by K.S.A. 2015 Supp. 38-2202(d)(1), (d)(3), (d)(5) or (d)(11), and amendments thereto, or comparable proceedings under the laws of another jurisdiction;
>
> . . . .

'(5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home.'" K.S.A. 2015 Supp. 38-2271.

The parent bears the burden to rebut the presumption of unfitness by a preponderance of the evidence. K.S.A. 2015 Supp. 38-2271(b). If the parent does not provide the district court with "proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the [district] court shall terminate parental rights in proceedings pursuant to K.S.A. 2015 Supp. 38-2266 et seq., and amendments thereto." K.S.A. 2015 Supp. 38-2271(b).

In Father's case, the district court found that two statutory presumptions of unfitness applied:

- On two or more prior occasions, children in Father's physical custody had been adjudicated a CINC, under K.S.A. 2015 Supp. 38-2271(a)(3); and
- Father's children had been in out-of-home placement for more than a year under court order, and he had substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed towards reintegration, under K.S.A. 2015 Supp. 38-2271(a)(5).

For the statutory presumption to be applied in a constitutional manner, the district court must first determine whether it is a K.S.A. 60-414(a) or (b) presumption. *In re J.L.*, 20 Kan. App. 2d 665, 681, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995).

8

The State concedes the district court failed to make this determination. Instead, the State asserts this case is akin to *In re J.S.*, 42 Kan. App. 2d 113, 208 P.3d 802, *rev. denied* 289 Kan. 1278 (2009). In that case, the district court applied the presumption without reference to K.S.A. 60-414. On appeal, we found that the district court's failure to consider K.S.A. 60-414, before applying the statutory presumption, was error. 42 Kan. App. 2d at 118-19. But we concluded this was not a reversible error because the mother failed to preserve the issue by proper objection before the district court. 42 Kan. App. 2d at 119.

Here, Father did not object to the district court's application of the presumption without consideration of K.S.A. 60-414. Therefore, as determined in *In re J.S.*, the district court's error in this regard was not grounds for reversing its decision.

The district court found by clear and convincing evidence that Father was presumptively unfit under K.S.A. 2015 Supp. 38-2271(a)(3). To the extent Father addresses this issue, he contends the State failed to introduce certified copies of the prior CINC adjudications. He does not contend that the children were not in his custody when the prior CINC adjudications were made.

The record reveals the district court took judicial notice of two prior CINC cases: Case No. 08-JC-51, in which K.W. and B.W. were adjudicated CINC's in Bourbon County; and Case No. 11-JC-30, in which Ca.W. was first adjudicated a CINC. The record is unclear as to whether the State requested the district court take judicial notice of these cases or whether the district court did so *sua sponte*.

K.S.A. 60-409 governs the type of facts that a district court must or may judicially notice. A district court *may* take judicial notice, without request by a party, of "specific facts and propositions of generalized knowledge which are capable of immediate and

9

accurate determination by resort to easily accessible sources of indisputable accuracy."
K.S.A. 60-409(b)(4).

Kansas law recognizes a district court may take judicial notice of its own records under K.S.A. 60-409(b)(4). *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 739, 159 P.3d 1035 (2007); see *State v. Shelton*, 252 Kan. 319, 323-25, 845 P.2d 23 (1993); *State v. Shaffer*, 14 Kan. App. 2d 282, Syl. ¶ 3, 788 P.2d 1341, *rev. denied* 246 Kan. 770 (1990). Moreover, a district court "may take judicial notice of the outcome of another proceeding, where that ultimate outcome possesses an independent legal significance." *Jones v. Bordman*, 243 Kan. 444, 459, 759 P.2d 953 (1988).

Here, the district court had discretion to take judicial notice of the prior CINC adjudications under K.S.A. 60-409(b)(4). As such, clear and convincing evidence supported the district court's finding that on two or more prior occasions a child in Father's physical custody was adjudicated a CINC.

The district court also found that Father was presumptively unfit under K.S.A. 2015 Supp. 38-2271(a)(5), which requires clear and convincing evidence that (1) the child was in out-of-home placement for a cumulative period of more than 1 year; and (2) the parent substantially neglected or willfully refused to carry out a reasonable plan directed toward reintegration. Father contends there was insufficient evidence to support a presumption of unfitness under K.S.A. 2015 Supp. 38-2271(a)(5). But the presumptions under K.S.A. 2015 Supp. 38-2271 are stated in the alternative, and we have already determined that the evidence satisfied the requirements for a presumption under K.S.A. 2015 Supp. 38-2271(a)(3). Thus, we need not consider the sufficiency of the evidence under the alternate provisions of K.S.A. 2015 Supp. 38-2271(a)(5).

*Statutory Unfitness Factors*

Father also challenges the district court's finding that he was unfit under K.S.A. 2015 Supp. 38-2269. The Revised Kansas Code for Care of Children provides a nonexclusive list of factors the district court must consider when determining parental fitness. See K.S.A. 2015 Supp. 38-2269(b) and (c). The existence of any one of these factors "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2015 Supp. 38-2269(f). The district court is not confined to the statutory factors in making its determination of parental fitness. See K.S.A. 2015 Supp. 38-2269(b).

The district court determined Father was unfit based on the following statutory factors:

- "[C]onduct toward a child of a physically, emotionally or sexually cruel or abusive nature" under K.S.A. 2015 Supp. 38-2269(b)(2);
- "[P]hysical, mental or emotional abuse or neglect or sexual abuse of a child" under K.S.A. 2015 Supp. 38-2269(b)(4);
- "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family" under K.S.A. 2015 Supp. 38-2269(b)(7); and
- "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child" under K.S.A. 2015 Supp. 38-2269(b)(8).

"K.S.A. [2015] Supp. 38-2269(b)(2) concerns conduct toward a child of an 'abusive nature.'" *In re S.D.*, 41 Kan. App. 2d 780, 789, 204 P.3d 1182 (2009). In contrast, K.S.A. 2015 Supp. 38-2269(b)(4) pertains to direct abuse of a child. 41 Kan. App. 2d at 789. A parent's failure to protect their children from abuse amounts to conduct

11

toward a child of physically, emotionally, or sexually abusive nature. 41 Kan. App. 2d at 789.

"'[A] child should not have to endure the inevitable to its great detriment and harm in order to give the [parent] an opportunity to prove [parental] suitability.'" *In re Price*, 7 Kan. App. 2d 477, 480, 644 P.2d 467 (1982) (quoting *In re East*, 32 Ohio Misc. 65, 288 N.E.2d 343 [1972]). A district court that observes abuse of one child "should not be forced to refrain from taking action until the next child suffers injury." *In re A.B.*, 12 Kan. App. 2d 391, 392, 746 P.2d 96 (1987).

Viewing the evidence in the light favoring the State, a rational factfinder could conclude it was highly probable that Father sexually abused R.W. and demonstrated conduct which posed a significant risk of abuse to Ch.W. and Ca.W. Plumlee, R.W.'s therapist, testified that R.W. described to Plumlee a specific incidence of sexual abuse by Father. R.W. also estimated that he was abused on about 20 occasions. R.W.'s account never changed, and he consistently responded negatively when Father was mentioned. Although no direct evidence suggested Father sexually abused either Ch.W. or Ca.W., the mere fact that Father sexually abused one child demonstrates that he posed a significant risk to any other children in his care. As Plumlee testified, Father's history of sexual abuse of R.W. is conduct of an abusive nature affecting his fitness as a parent to Ch.W. and Ca.W. as well. Thus, we conclude that clear and convincing evidence supported the district court's findings under K.S.A. 2015 Supp. 38-2269(b)(2) and (b)(4).

The statutory grounds for a finding of unfitness are stated in the alternative. We recognize that the existence of any one of these factors "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2015 Supp. 38-2269(f). But we conclude that under the facts presented here, the findings of sexual abuse are sufficient to support termination without resort to the added factor regarding failure to exercise reasonable efforts toward reintegration. We will, however, briefly discuss the

12

district court's finding that Father demonstrated a lack of effort to adjust his circumstances and conduct to meet the needs of the children. See K.S.A. 2015 Supp. 38-2269(b)(8). As already discussed, substantial evidence established that Father abused R.W. on multiple occasions. Based on this evidence, a rational factfinder could conclude Father demonstrated a lack of effort to adjust his conduct to meet his children's needs.

Considering all the evidence in the light favoring the State, clear and convincing evidence supported the district court's finding that Father was unfit under K.S.A. 2015 Supp. 38-2269.

*Foreseeable Future*

Father does not contest the district court's finding that his unfitness was unlikely to change in the foreseeable future. We measure the "foreseeable future" from the child's perspective, considering the child's perception of time. *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014). We may predict a parent's prospective fitness from that parent's past history. *In re Price*, 7 Kan. App. 2d at 483.

Credible evidence established that Father sexually abused at least one of the children on numerous occasions. Father's history of sexual abuse posed a significant risk to the children's future safety if they were returned to his care. There is no indication that Father was rehabilitated such that he no longer posed a threat. Simply put, no evidence suggested Father's unfitness was likely to change in the foreseeable future. Accordingly, we conclude clear and convincing evidence supported the district court's determination that Father's unfitness was unlikely to change in the foreseeable future.

*Best Interests of the Children*

Although Father did not specifically argue the district court erred in concluding

13

that termination of his parental rights was in the children's best interests, based on our review of the record we conclude the district court did not abuse its discretion in arriving at this conclusion. By the time of the termination hearing, the children had been outside of Father's home for approximately 3 years. During that time, it was in the children's best interests to continue to build healthy bonds they had developed with their foster parents and to avoid contact with Father and the risk of further abuse.

*Failure to Serve the Children's Grandparents*

As a final point, Father contends the district court failed to properly serve the children's grandparents. Father maintains the addresses of the grandparents were available but, in violation of K.S.A. 2015 Supp. 38-2267, the district court did not notify them of the termination hearing.

In proceedings regarding the termination of parental rights, K.S.A. 2015 Supp. 38-2267(a) and (b)(1) require the district court to give notice of the termination hearing to all of a child's grandparents at their last known addresses. At the beginning of the termination hearing, the district court must determine whether due diligence has been exercised in determining the identity and location of a child's grandparents and in accomplishing service of process. K.S.A. 2015 Supp. 38-2267(c). Here, the district court did not inquire as to whether the children's grandparents were properly served. But any error in this regard is grounds for reversal only if there is a showing of prejudice. See *State v. Jones*, 273 Kan. 756, 766, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002).

Here, Father fails to demonstrate prejudice. The grandparents have not sought to intervene at this point and assert that they had rights as grandparents they would have pursued if they had been notified of the proceedings. Father does not point to any evidence which the children's grandparents would have presented which could have rebutted the State's case. He does not allege or explain how their presence would have

14

affected the outcome of the proceedings. Thus, we conclude that the district court's failure to appropriately notify the children's grandparents of the termination hearing was not reversible error.

Affirmed.