(208 P.3d 802)
No. 101,777

In the Interest of J.S., K.S., A.A-S., S.D., C.D. IV., Children in Need of Care.

Opinion filed June 12, 2009.

*Michael G. Highland,* of Bonner Springs, for appellant natural mother.

*Todd G. Thompson,* county attorney, and *Steve Six,* attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

RULON, C.J.: A.A. appeals the district court's termination of her parental rights to her children, J.S. (d/o/b 2002), K.S. (d/o/b 2003), A.A.-S. (d/o/b 2005), S.D. (d/o/b 2006), and C.D., IV (d/o/b 2007). We conclude that a rational factfinder could have found it highly

probable, *i.e.*, by clear and convincing evidence, that mother's parental rights should be terminated and that termination was in the children's best interests. We affirm.

In October 2006, CINC proceedings were initiated for the four older children. The petition alleged that mother and C.D., the natural father of S.D. (and later of C.D., IV, who was born in 2007) were involved in a domestic violence incident in which C.D. physically attacked mother while she was holding the infant, S.D. During the altercation, A.A. kicked the oldest child, J.S., in an attempt to kick C.D. Family members reported that mother had called them daily over the preceding weeks to report domestic violence in the home. Further, cash assistance and food stamps had been discontinued due to C.D.'s failure to cooperate with Kansas Social and Rehabilitation Services (SRS). The district court ordered S.D. to be placed in SRS custody, but the other three children were allowed to remain in mother's custody. In November 2006, the children were adjudicated to be children in need of care.

The three older children remained in mother's custody until August 2007, when they were taken into police protective custody. The children were reported to have been outside most of the morning in 96 degree heat, and when the police went to the home with an SRS worker to investigate, they found the home and the children were filthy. The home had only mattresses on the floor with no bedding, the home was not easily accessible as there were only paths leading from room to room, and there were numerous cats in the home and four big dogs in the backyard. Feces were found on the floor in the home and the smell was "unbearable." There was no food in the home and the children were hungry. The children appeared to be unattended, but police located mother's 17-year-old cousin asleep in the basement. The cousin was uncertain of mother's whereabouts but believed she might be at work.

The district court placed J.S., K.S., and A.A-S. in the custody of SRS. Subsequently, a reintegration plan was developed that consisted of a number of tasks for mother to complete, including: obtain stable housing; maintain a clean and habitable living environment; seek and maintain employment of 35 hours per week and have her employer provide verification of employment to the case-

worker; obtain day care; obtain reliable transportation; complete and follow a monthly budget; participate in individual therapy; maintain regular, consistent contact with the Kaw Valley Center (KVC) caseworker; complete parenting classes; submit to drug tests; and attend all scheduled visitation. That plan was in effect from December 2007 to August 2008.

In May 2008, a CINC petition was filed alleging that infant C.D., IV, born December 2007, was a child in need of care. The petition alleged that mother was unable to properly care for C.D., IV, because she was unemployed and homeless. The petition alleged mother had lived in four different places since the child's birth and was currently living in a motel. Further, mother was no longer receiving cash or food stamp assistance due to her failure to comply with SRS work programs, and she did not have a medical card or other insurance for the child, who needed medical attention because he was unable to move his head from side to side. C.D., IV, remained in mother's care until July 2008, when the court adjudicated C.D., IV, to be a child in need of care and placed him in the custody of SRS. The decision to place C.D., IV, in SRS custody was based on the determination that extensive services had been provided to mother but had not resulted in a stable home.

After C.D., IV, was placed in SRS custody, a second reintegration plan was developed. That plan included many of the same tasks as the initial plan, but also included the requirement that mother obtain and maintain clean and stable housing in which she was the sole occupant. The caseworker did not want other persons living in mother's home, including maternal grandmother, because maternal grandmother had tested positive for drugs.

In October 2008, the State filed a motion to terminate mother's parental rights. A trial was held on November 18, 2008. Cristin Stice, mother's KVC caseworker testified that although mother completed parenting classes and regularly visited her children, she failed to complete most of the tasks on her first reintegration plan. Specifically, mother failed to maintain a stable, clean, and habitable residence, failed to obtain and provide verification of employment, failed to participate in ongoing individual therapy, failed to complete and follow a monthly budget, failed to obtain day care with

someone other than her mother, and failed to obtain reliable transportation. According to Ms. Stice, mother also failed to comply with most of the tasks of the second plan. Although she obtained housing at the end of August 2008, maternal grandmother was listed on the lease. Mother also failed to provide any information concerning her utilities, a monthly budget, a cleaning schedule, proof that she was participating in individual counseling, proof that she had obtained day care, proof of reliable transportation, and verification from an employer showing employment of at least 35 hours per week. Although mother provided a paycheck stub from Little Caesars Pizza showing she worked 6 hours per week, and a pay stub from the Guidance Center, the stubs were not sufficient verification of employment as required by the reintegration plan. Last, although mother had been maintaining regular contact with the KVC caseworker, by the time of the termination hearing on November 18, 2008, mother's last contact had been on October 7, 2008.

Mother testified that she had done many of the things required by the case plans. She testified that she had been employed for all but 3 months of 2007. She testified that in 2008, she was working at a motel until June 2008, when she began working at Little Caesars Pizza. She testified she still works there, and as of September 1, 2008, she started working as a caregiver for her sister through the Coalition for Independence. She testified she works a total of about 25 hours per week and makes about $500 per month. She testified she provided all of that information to her caseworker.

On the issue of the lease, mother testified that she had her mother removed from the lease in September and that she provided proof of that to the caseworker. Mother provided photographs, which are not in the record on appeal, purporting to show her home was clean, but mother admitted that when a CASA volunteer visited the home, it was not presentable. She also testified she had provided the caseworker with proof she could establish day care that would be paid for by the State. On the therapy requirement, mother testified that she was told she did not need therapy. She stopped going to therapy, but later started going again.

In a written decision, the district court terminated mother's parental rights to the children. The court found that the State had proved by clear and convincing evidence that mother was unfit by reason of conduct or condition that rendered her unable to properly care for the children and that conduct or condition was unlikely to change in the foreseeable future. K.S.A. 2008 Supp. 38-2269(a).

In addition to finding mother unfit based on the statutory factors, the district court also found mother was presumed to be unfit as to four of the five children, pursuant to K.S.A. 2008 Supp. 38-2271. Specifically, the district court found that the mother was presumed unfit as to S.D. because S.D. had been in an out-of-home placement for over 2 years, mother had failed to carry out a reasonable reintegration plan, and there is a substantial probability she will be unable to do so in the near future (K.S.A. 2008 Supp. 38-2271[a][6]). The district court found the mother was presumed unfit as to J.S., K.S., and A.A.-S. because they had been in an out-of-home placement for over 1 year and mother had substantially neglected or willfully refused to carry out a reasonable reintegration plan (K.S.A. 2008 Supp. 38-2271[a][5]). The court found that mother had failed to rebut this presumption of unfitness by a preponderance of the evidence.

On appeal, mother raises two issues: (1) the district court erred in applying the presumption of unfitness under K.S.A. 2008 Supp. 38-2271; and (2) the evidence was insufficient to support the district court's determination that mother is unfit under K.S.A. 2008 Supp. 38-2269(a).

## Analysis

*The presumption of unfitness*

K.S.A. 2008 Supp. 38-2271 provides a statutory presumption of unfitness. It states, in pertinent part:

"(a) It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

. . . .

(5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home;

(6) (A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future;

. . . .

"(b) The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2008 Supp. 38-2266 et seq., and amendments thereto."

K.S.A. 2008 Supp. 38-2271(a) specifically refers to K.S.A. 60-414, which provides:

"Subject to K.S.A. 60-416, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates; (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

Mother argues the district court erred in applying the statutory presumption without determining whether it is a K.S.A. 60-414 (a) or (b) presumption. Mother relies on *In re J.L.*, 20 Kan. App. 2d 665, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995), in which this court held that in order for the statutory presumption to be applied in a constitutional fashion, the district court must first determine whether it is a K.S.A. 60-414(a) or (b) presumption. 20 Kan. App. 2d at 681.

Mother is correct—the district court's decision applying the presumption never even mentions K.S.A. 60-414. The State does not address this failure, arguing instead that subsection (a) applied in

this case because the evidence had probative value of the existence of the presumed fact. K.S.A. 60-414(a). However, at no time did the State proceed on the basis of the statutory presumption. The State did not allege the presumption of unfitness in its motion for termination, it did not proceed at the hearing under the presumption, and it did not argue at the close of the hearing for application of the presumption. Instead, it appears the State proceeded solely on unfitness under K.S.A. 2008 Supp. 38-2269. In fact, the first time the presumption came up was at the end of the hearing when the district court noted it.

Under *In re J.L.*, the district court's failure to consider K.S.A. 60-414 before applying the statutory presumption is error. See 20 Kan. App. 2d at 679-80. Reversal is not required, however. Mother did not preserve this issue for appeal because she did not raise it before the district court. See *In re Marriage of Bradley*, 258 Kan. 39, Syl. ¶ 2, 899 P.2d 471 (1995) (when district court's findings are objectionable on grounds other than sufficiency of the evidence, an objection must be made to preserve the issue on appeal); K.S.A. 60-252; Supreme Court Rule 165 (2008 Kan. Ct. R. Annot. 235). Additionally, failure to consider K.S.A. 60-414 prior to applying the presumption of unfitness is a constitutional violation. *In re J.L.*, 20 Kan. App. 2d at 679-80. Constitutional grounds for reversal are not considered for the first time on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007).

Even if the issue was preserved for appeal, reversal would not necessarily be required. We note that the district court's decision terminating mother's parental rights was based on two grounds: application of the statutory presumption, and the determination that mother is unfit under K.S.A. 2008 Supp. 38-2269. If sufficient evidence exists to support the determination based on the statutory factors of unfitness, reversal would not be required.

*Sufficiency of the evidence to support termination under K.S.A. 2008 Supp. 38-2269*

Mother challenges the sufficiency of the evidence to support the district court's determination that she is unfit under K.S.A. 2008 Supp. 38-2269(a).

K.S.A. 2008 Supp. 38-2269(a) provides that the district court may terminate parental rights after finding on clear and convincing evidence that "the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." Clear and convincing evidence is evidence which shows that the truth of the facts asserted is highly probable. *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 3, 187 P.3d 594 (2008). When an appellate court reviews a trial court's determination to terminate parental rights, it considers whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated. *In re B.E.Y.*, 40 Kan. App. 2d 842, Syl. ¶ 1, 196 P.3d 439 (2008).

K.S.A. 2008 Supp. 38-2269(b) and (c) provide a nonexclusive list of factors the court may consider in determining unfitness and in terminating parental rights. The existence of any one of the statutory factors "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2008 Supp. 38-2269(f).

The district court found mother unfit based on the following factors: the children had been physically, mentally, and emotionally neglected by mother (K.S.A. 2008 Supp. 38-2269[b][4]); a lack of effort on mother's part to adjust her circumstances, conduct, or conditions to meet her children's needs (K.S.A. 2008 Supp. 38-2269[b][8]); a failure of reasonable efforts made by the appropriate public agencies to rehabilitate the family (K.S.A. 2008 Supp. 38-2269[b][7]); mother had failed to carry out a reasonable court-approved plan directed toward reintegration ( K.S.A. 2008 Supp. 38-2269[c][3]); and mother had failed to provide adequate care when the children were in her home (K.S.A. 2008 Supp. 38-2269[c][1]).

Mother contends that she substantially complied, or attempted to comply, with the tasks of the reintegration plans. She points to her testimony at the hearing that she was employed, had arranged for day care, had a clean and stable home, and had transportation.

She contends her inability to complete all of the tasks was due to her financial status, not unfitness.

Mother's argument invites this court to weigh her testimony against the testimony of the caseworker. That, however, was the role of the district court. Under our standard of review, we view the evidence in the light most favorable to the State and do not weigh conflicting evidence, pass on credibility of witnesses, or re-determine questions of fact. *In re B.D.-Y.*, 286 Kan. at 699.

In summary, considering all the evidence in the record before us in the light most favorable to the State, we are convinced a rational factfinder could have found it highly probable that mother was unfit by reason of conduct or condition that rendered her unable to properly care for her children and that her conduct or condition was unlikely to change in the foreseeable future. Accordingly, the district court's error in applying the presumption of unfitness does not require reversal since the district court's decisions terminating mother's parental rights is supported by a basis independent of the application of the presumption. Last, the district court found that termination was in the children's best interests, in light of their physical, mental, and emotional needs. We affirm.