NOT DESIGNATED FOR PUBLICATION

No. 115,986

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of C.L.W.,
YOB 2004, a female.

MEMORANDUM OPINION

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Opinion filed January 27, 2017.
Affirmed.

*Brandon R. Bieker*, of Johnson Schowengerdt, PA, of Iola, for appellant natural father.

*Jerry B. Hathaway*, county attorney, for appellee.

*Charles H. Apt III*, of Apt Law Offices, LLC, of Iola, guardian ad litem.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: Father's parental rights were terminated to his child, C.L.W., who is
approximately 13 years old, after a trial at the district court. On appeal, Father argues:
(1) there was not clear and convincing evidence to find he was presumed unfit under
K.S.A. 2015 Supp. 38-2271; (2) there was not clear and convincing evidence to find that
he was unfit under K.S.A. 2015 Supp. 38-2269; (3) the court abused its discretion when it
found that the termination of his parental rights is in the best interests of C.L.W.; and (4)
his due process rights were violated. We affirm the district court's findings because there
was clear and convincing evidence to find that Father was presumed unfit under both
K.S.A. 2015 Supp. 38-2271 and K.S.A. 2015 Supp. 38-2269, the court did not abuse its
discretion when it found that the termination of parental rights was in the best interests of
C.L.W., and Father's due process rights were not violated.

1

On December 15, 2015, a severance hearing was held in this matter before a magistrate judge to terminate Father's parental rights to C.L.W. The natural mother has apparently waived her parental rights. Father was not present for the hearing, but the State attempted to have him present by issuance of a transport order from the correctional facility in Missouri where he resides. The State was told by the facility that it would not release Father to come to court for a termination of parental rights hearing. The only way it would ever release him under a transport order is if Father was testifying in a criminal case as a witness or it was his criminal case. The State tried to have a video hook up with the prison, but it did not work. The court found that due diligence had been made by the State to make sure Father had every opportunity to be present.

At the time of the hearing in the magistrate court, C.L.W. had been in out-of-home placement for over 1 year. C.L.W. came into custody in June 2014, and Angela Black, a case manager for KVC, took over the case in March 2015. Black testified that KVC did not develop a plan for Father because he was incarcerated, the length of his sentence, and he had not asked for a case plan. Father did ask for visitation, so Black spoke with the guardian ad litem who spoke with C.L.W. and reported that she did not want any visitation with Father. At the end of the hearing, the court found there was clear and convincing evidence to find Father unfit and terminated his parental rights.

Father appealed the decision of the magistrate judge to the district court. The appeal was heard on May 16, 2016. Father appeared by phone from the Algoa Correctional Center in Missouri. Father testified that in 2002 he was convicted of driving while intoxicated and driving while revoked. He served 3 years in jail for those crimes. In 2008, he was convicted of trafficking cocaine in the second degree, resisting arrest, driving while revoked, and driving while intoxicated. For those crimes he was sentenced to 5 years. In 2013, he was convicted of driving while intoxicated and driving with a revoked license. He had a presumptive release date of 2019, but if he went to a 6-month

2

treatment program he might get out in 2017. He was in the process of appealing his most recent case.

Father last saw C.L.W. on March 24, 2013. He did not know that C.L.W. was his child until 2008 when a paternity test was done. C.L.W. had never lived with Father prior to him going to prison. Father stated he had contact with Black a couple of times throughout the case, but he never received a case plan. He stated he asked for counsel prior to his attorney being appointed for him in June 2015. He also testified he was not aware that if he did not fulfill his case plan tasks or become involved in the case that his parental rights could be severed.

Black testified that KVC had sent Father monthly letters and had monthly contact with him by phone. Father wanted a reintegration plan but told Black it would be several years before he was released. Black contacted the guardian ad litem and told him that Father wanted phone contact with C.L.W. and a reintegration plan. The guardian ad litem said it was his position that no contact be made, especially if C.L.W. was not willing.

Black informed Father that if he wanted to request an attorney he had to go through the court system to do so. This information was relayed to him on the phone several times. Father was aware he needed to request an attorney, and if he wanted to have any contact with C.L.W. he had to go through the court system.

Black testified it was difficult to develop a reintegration plan across state lines because, as a licensed social worker in Kansas, she could not travel over state lines to do her job. KVC also cannot offer an interstate compact on placement to a parent who is incarcerated.

Ultimately, Black stated it was not a viable option for C.L.W. to reintegrate with Father based on his incarceration and charges. Black had a conversation with Father to

see if he was taking parenting classes in prison, and he said he was not. Black also testified that setting up a reintegration plan with an incarcerated inmate would not be in the best interest of C.L.W. because Father had minimal contact with her prior to her coming into custody, he had served many years in prison for different crimes, he did not have a relationship built with C.L.W., and C.L.W. reported seeing Father only one time. Black would not recommend reintegration with Father even if he was released from prison sooner because of the duration of the case. C.L.W. came into custody in 2014, she did not want contact with Father, and there was no established relationship between Father and C.L.W.

The district court affirmed the magistrate judge's ruling in terminating Father's parental rights.

On appeal, Father first argues the district court erred in finding he was presumed to be unfit to parent.

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2015 Supp. 38-2250. In addition to child in need of care adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2015 Supp. 38-2269(a). Clear and convincing evidence is that "which is sufficient to establish that the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 286 Kan. 686, 696, 187 P.3d 594 (2008).

K.S.A. 2015 Supp. 38-2269(a) states:

"When the child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which

4

renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

K.S.A. 2015 Supp. 38-2271(a)(5) creates a presumption, in the manner provided in K.S.A. 60-414, that a parent is unfit

"by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that: . . . the child has been in out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home."

Here, the district court found that K.S.A. 2015 Supp. 38-2271(a)(5) applied in this case. Father argues the State did not prove that he substantially neglected or willfully refused to carry out a reasonable plan that was approved by the court for reintegration. He states he asked for a reintegration plan, but he did not receive one. Therefore, without fulfilling the second prong of K.S.A. 2015 Supp. 38-2271(a)(5) the court could not find that he was presumed unfit.

It was uncontroverted that C.L.W. has been in out of home placement for over a year. It was also established by clear and convincing evidence that Father had substantially neglected or willfully refused to carry out a reintegration plan. Because Father was incarcerated, KVC could not set up an interstate compact on placement. It also could not develop a reintegration plan across state lines because it is licensed in

5

Kansas, not Missouri. Father was told multiple times that if he wanted to have contact with C.L.W. he would have to go through the court system.

Further, when the State establishes a presumption of unfitness, the parent must overcome that presumption by showing by a preponderance of the evidence that he is a fit parent. *In re X.D.*, 51 Kan. App. 2d 71, 74-75, 340 P.3d 1230 (2014). Here, Father does not present any evidence to rebut this presumption. He just states he was not given a reintegration plan, which meant he could not be presumed unfit under the statute.

Father then argues that because the district court did not determine if the presumption was a K.S.A. 60-414(a) or (b) presumption before making the findings under K.S.A. 2015 Supp. 38-2271, the presumption was in error. K.S.A. 60-414 states:

> "Subject to K.S.A. 60-416, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates; (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

Father is correct that the district court did not determine if the presumption is a K.S.A. 60-414(a) or (b) presumption. A similar failure to discuss which presumption applied occurred in *In re J.S.*, 42 Kan. App. 2d 113, 119, 208 P.3d 802 (2009.) The *J.S.* court held that the district court's failure to consider K.S.A. 60-414 before applying the statutory presumption is error. 42 Kan. App. 2d at 119. However, in that case, reversal was not required because the mother did not preserve the issue for appeal because she did

6

not raise it before the district court. 42 Kan. App. 2d at 119. In addition, the failure to consider K.S.A. 60-414 prior to applying the presumption of unfitness is a constitutional violation. 42 Kan. App. 2d at 119. Constitutional grounds for reversal are not considered for the first time on appeal. 42 Kan. App. 2d at 119. Here, Father did not raise this issue at the district court level, and while it was error for the district court to not consider K.S.A. 60-414, it is not grounds for reversal because the issue was not preserved for appeal.

Therefore, because there is clear and convincing evidence that Father was presumed unfit, he does not overcome the presumption, and he did not preserve the issue regarding K.S.A. 60-414, the district court is affirmed.

Father next contends that there was not clear and convincing evidence to support the district court's finding that he was unfit pursuant to K.S.A. 2015 Supp. 38-2269.

In addition to the finding that Father was presumed unfit under K.S.A. 2015 Supp. 38-2271, the district court also found him to be an unfit parent pursuant to K.S.A. 2015 Supp. 38-2269. In order to make this finding, the district court must find by clear and convincing evidence the parent is unfit and shall consider, but is not limited to, the following:

> "(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental, and emotional needs of the child;
> (2) conduct toward a child of a physically, emotionally, or sexually cruel or abusive nature;
> (3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;
> (4) physical, mental, or emotional abuse or neglect or sexual abuse of a child;

(5) conviction of a felony and imprisonment;

(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child; and

(9) whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply." K.S.A. 2015 Supp. 38-2269(b)

Here, the district court found that Father was unfit under factors 5, 7, 8, and 9. Each of these factors will be examined individually.

For factor 5—conviction of a felony and imprisonment—it was uncontroverted that Father is a convicted felon and incarcerated in Missouri. Father argues there was no evidence presented that his condition was unlikely to change in the foreseeable future.

When determining how to define "foreseeable future," the district court examines the term from the perspective of a child. *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Children and adults have different perceptions of time, and a child has the right to permanency within a time frame that is reasonable to the child. 50 Kan. App. 2d at 1170. The district court may draw inferences from the past conduct of a parent to determine that the parent's conduct will not likely change in the foreseeable future. *In re Z.C.*, No. 97,032, 2007 WL 1310097, at *3 (Kan. App. 2007) (unpublished opinion).

Here, there was evidence presented at trial that Father had a presumptive prison release date of 2019, but if he attended a treatment program he could be released in 2017. He has been in and out of prison since 2002. C.L.W. has been in out of home placement since 2014. Based on what was foreseeable for C.L.W., and Father's past conduct and

current incarceration, there was clear and convincing evidence to find that his condition would not change for the foreseeable future.

For factor 7—failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family—Father argues there was uncontroverted evidence that he was never assigned any tasks to complete and, therefore, this factor cannot be attributed to him. However, Father received monthly letters and phone contact with KVC during the period of the case. Based on his incarceration in Missouri, KVC could not offer an interstate compact on placement and it could not work across state lines, as it is licensed in Kansas and not in Missouri. Black did have conversations with Father about taking classes while incarcerated, such as parenting classes, but Father did not take any. Further, KVC is not required to exhaust all its resources to rehabilitate a parent, and a "'herculean effort'" is not required for a court to find a parent unfit. *In re S.C.*, No. 107,950, 2012 WL 5392188, at *3 (Kan. App. 2012) (unpublished opinion) (citing *In re B.K.S., Jr.*, No. 95,297, 2006 WL 2443937, at *2 [Kan. App. 2006] [unpublished opinion]). There was clear and convincing evidence that this factor was met.

For factor 8—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child—Father argues he was never assigned tasks to complete and was denied visitations with C.L.W. However, there were programs offered in prison that Father did not take part in. He was aware that in order to try and have contact with C.L.W. he had to go through the court system. Most important, Father did not have a relationship established with C.L.W. before he went back to prison in 2013. C.L.W. reported seeing him one time. In addition, from 2002 to now, Father has been convicted of several felonies involving alcohol and drugs and has not changed his behavior. He is currently incarcerated for driving while intoxicated. There was clear and convincing evidence that this factor was met.

For the final factor—whether the child has been in extended out of home placement as a result of actions attributable to the parent—Father claims that no evidence was provided that C.L.W. was placed in custody because of his actions. While C.L.W. did not initially go into placement because of any action on the part of Father, she had been in extended out of home placement partially because Father was not a viable option due to his extensive criminal history and current incarceration. Because he had been incarcerated the entirety of the case, he was not a viable reintegration option, which kept C.L.W. in out-of-home placement. There was clear and convincing evidence that this factor was met.

In order to find factor 9 applicable, 1 or more factors from K.S.A. 2015 Supp. 38-2269(c) must apply to the case. This statute states that when a child is not in the physical custody of the parent, the court shall consider, but is not limited to:

> "(1) Failure to assure care of the child in the parental home when able to do so;
> (2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;
> (3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and
> (4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay." K.S.A. 2015 Supp. 38-2269(c)

Here, factor 2 and factor 4 apply directly to this case. For factor 2, Father was aware that he could go through the court system to gain contact to C.L.W., but he never did so. For factor 4, Father never paid child support for C.L.W. He states his incarceration precluded his ability to pay child support; however, the Kansas Supreme Court has held that incarceration is not a legal justification to modify or suspend a parent's child support obligations. *In re Marriage of Thurmond*, 265 Kan. 715, 729, 962 P.2d 1064 (1998).

10

Because there was clear and convincing evidence to support the finding that Father was unfit pursuant to K.S.A. 2015 Supp. 38-2269, the district court is affirmed.

Father also argues the district court abused its discretion when it found the termination of his parental rights to C.L.W. was in the best interests of the child.

Under K.S.A. 2015 Supp. 38-2269, the district court may terminate parental rights when it finds by clear and convincing evidence that the parent is unfit and the conduct is unlikely to change in the foreseeable future. If the court makes this finding, the court then shall consider whether termination of parental rights is in the best interests of the child. K.S.A. 2015 Supp. 38-2269(g)(1). In making this determination, the court gives primary consideration to "the physical, mental, and emotional health of the child." K.S.A. 2015 Supp. 38-2269(g)(1). "If the physical, mental, or emotional needs of the child would best be served by termination of parental rights, the court shall so order." K.S.A. 2015 Supp. 38-2269(g)(1).

The district court is in the best position to make findings as to what is in the best interests of the child. *In re K.P.*, 44 Kan. App. 2d 316, 318, 235 P.3d 1255 (2010). Therefore, "its judgment will not be disturbed in the absence of an abuse of judicial discretion." 44 Kan. App. 2d at 318. "A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Here, the district court found that Father was unfit to parent C.L.W. C.L.W. had been in out-of-home placement for over 2 years and only had contact with Father once since 2013. C.L.W. reported to Black that she did not want contact with Father and had no established relationship with him.

Father has been in and out of prison since 2002 and will be released from his current sentence at the earliest in April 2017 for a mandatory 6-month treatment. The latest he could be released is 2019. Based on Father's lack of relationship with C.L.W., her desire to not have contact with him, and Father's criminal history and current incarceration, it is clear the district court did not abuse its discretion when it found that it is in the best interests of C.L.W. to terminate Father's parental rights. The decision was not arbitrary, unreasonable, or based on error. See *Northern Natural Gas Co.*, 296 Kan. at 935. Therefore, the district court is affirmed.

Father argues that the failure to appoint him counsel was a violation of his due process rights. While we will not generally review constitutional claims raised for the first time on appeal, there are exceptions. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). The three recognized exceptions are: "(1) [t]he newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights or (3) the district court is right for the wrong reason." *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008.)

Father argues this issue should be heard for the first time on appeal because it falls under the second exception. The State argues that Father failed to argue the exception, and therefore the issue should not be heard. Under Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41), if an issue is not raised below there must be an explanation why the issue is now properly before the court. Here, Father argues it is properly before the court because it affects a fundamental right and serves the ends of justice.

Under K.S.A. 2015 Supp. 38-2205(b)(1) if a parent desires but is financially unable to retain an attorney to represent the parent, the court shall appoint an attorney for

12

the parent. Father argues that he was not appointed counsel until after the State severed his rights at the first hearing. He states that this failure to appoint counsel violated his due process rights.

KVC informed Father that if he wanted an attorney, he would have to contact the court system. In addition, Father had counsel, Mr. Bieker, for the severance hearing that took place on December 15, 2015, when his parental rights were initially terminated. Father references a status hearing on June 15, 2015, when he did not yet have counsel; however, this was not the termination hearing. Because Father had counsel for both of his termination of parental rights hearings, he was not denied due process, and we affirm.

Affirmed.