NOT DESIGNATED FOR PUBLICATION

Nos. 128,260
128,261
128,262
128,263

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.P., K.P., K.P., and K.P.,
Minor Children.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Submitted without oral argument. Opinion filed May 30, 2025. Affirmed.

*Candace S. Bridgess*, of Kansas Legal Services, of Hutchinson, for appellant natural mother.

*Jamie L. Karasek*, assistant district attorney, for appellee.

Before HILL, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: Mother appeals the termination of parental rights to her four children, born in 2012, 2014, 2015, and 2017. Mother contends that the district court improperly applied the presumption of unfitness set forth in K.S.A. 38-2271(a)(5); her testimony adequately rebutted the presumption; and there was insufficient evidence of her unfitness. The district court found Mother's testimony was not credible and there was clear and convincing evidence she was unfit under several factors listed in K.S.A. 38-2269(b) and (c). After the children had been in out-of-home placement for 17 months, the evidence was undisputed that Mother did not have suitable housing, did not complete drug treatment, did not complete parenting classes, had not gotten beyond supervised visitation with the children, and was headed back to prison to serve a 13-month prison sentence. The district court made no error, and we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2023, Mother was taken into custody and detained in jail. Father's whereabouts were unknown. Mother arranged for her friend, Donna, to watch her four children. After one of the children ran off, Donna informed law enforcement she could not care for all four children. The four children were placed in protective custody.

The next day, the State filed individual petitions in the McPherson County District Court alleging all four children were children in need of care (CINC). In all four cases, the court granted temporary custody to the Secretary of the Department for Children and Families. In March 2023, Mother did not contest the children were in need of care, and the district court adjudicated them as such.

While still in jail, Mother met with a case worker from Saint Francis Ministries (SFM), the agency providing case management, and was given several case plan tasks to work toward reintegration with her children. Those tasks included:

- obtain and maintain a residence appropriate for the children;
- obtain and maintain employment;
- submit to random drug testing;
- complete a drug and alcohol evaluation and follow recommendations;
- participate in individual and family therapy;
- resolve pending criminal charges; and
- attend parenting groups or parenting courses.

Mother was to provide proof of the completion of the tasks.

During the pendency of these cases, Mother was in and out of custody. On March 30, 2023, Mother was sentenced to 24 months' imprisonment for two convictions of possession of methamphetamine, a severity level 5 felony, but granted probation for 18 months.

In May 2023, Mother relocated to Reno County, and venue of the CINC cases was transferred to Reno County.

Throughout this time, Mother continued using illegal drugs. Mother admitted using methamphetamine in September and October 2023. In January 2024, she tested positive for methamphetamine and marijuana.

In April 2024, the State filed motions to terminate Mother's parental rights. The State alleged Mother was presumed to be unfit under two provisions of K.S.A. 38-2271:

- (a)(3)—on two or more occasions a child of the parent has been adjudicated in need of care, and
- (a)(5)—the children have been out of the home for over a year and the parent has substantially neglected or willfully refused to carry out a reasonable plan toward reintegration.

The State further alleged Mother was unfit under several provisions of K.S.A. 38-2269:

- (b)(3)—Mother's use of narcotic or dangerous drugs;
- (b)(7)—failure of reasonable efforts by an agency to rehabilitate the family;
- (b)(8)— Mother's lack of effort to adjust her circumstances, conduct or conditions;

- (c)(2)—Mother's failure to maintain regular visitation; and
- (c)(3)—Mother's failure to carry out a reasonable plan directed toward integration.

In June 2024, the McPherson County District Court revoked Mother's probation in her criminal case and ordered her to serve 13 months' imprisonment, with 31 days of jail credit granted. The court found Mother violated her probation by using marijuana, using methamphetamine, refusing a drug screen, failing to report to her probation officer, and failing to complete a drug and alcohol evaluation. The State amended its motion for termination of parental rights, alleging Mother was also unfit under K.S.A. 38-2269(b)(5) (conviction of a felony and imprisonment).

The termination hearing was held in July 2024. At the time of the termination hearing, the children were ages 7, 8, 11, and 12. Father relinquished his parental rights and is not a party to this appeal. At the beginning of the hearing, the district court stated, "[W]e're proceeding under the presumption that it's been more than a year and reintegration hasn't occurred."

Mother testified that she completed 90 percent of her case plan tasks. She had a two-bedroom apartment for about six months until it was flooded from a storm. She now had no residence. She worked at Tyson's for six months and then at Giant Laundry for four months. While she was now unemployed, she would have a full-time job at Giant Laundry when she was released from prison. She testified she provided SFM with verification of her employment.

Mother testified she never refused a drug test. She completed some clean and some dirty drug tests. She acknowledged she did not participate in scheduled inpatient drug treatment in May 2023, but she completed a drug and alcohol evaluation through Horizons in January 2024. She participated in weekly outpatient drug treatment but did

not complete it because she went back to jail. She signed releases so SFM could access her treatment information. She participated in individual therapy at Horizons for six months but did not do family therapy because she had to pay out-of-pocket and could not afford it. She took her medication regularly. She started parenting classes twice a week but had seven weeks remaining. She had resolved her criminal charges by being ordered to prison. Mother testified she attended visits with her children except for two because she was ill. She acknowledged her visits did not progress beyond supervised visitation.

Mother voiced several complaints about her case worker. Mother testified that she wanted help so that she could be a good mom. She "love[d her] kids more than anything." Mother believed her case worker set her up for failure. But she agreed that her case worker was not responsible for her methamphetamine use or her prison sentence. Mother maintained that she would only be serving 7 months of the 13-month prison sentence, per her criminal attorney, but it was unclear how she or her attorney arrived at that number.

Sonya Carlton was the SFM case manager or reintegration supervisor on this case since July 2023. Carlton testified she talked with Mother about starting mental health services and offered to do a walkthrough of her home. Carlton had difficulty contacting Mother, and she had no contact with Mother between November 13, 2023, and March 2024. Mother was not receptive when Carlton tried to talk with her about her case plan tasks. Mother kicked Carlton out of her home in March 2024; walked out of the case plan conference in May 2024; and walked away from Carlton after a visitation in June 2024.

Carlton testified Mother had not obtained stable housing suitable for reintegration; was about to serve a 13-month prison sentence; had provided proof of employment in June but was now unemployed; did not provide proof she completed a drug use assessment or attended treatment; continued using drugs; did not complete her mental health tasks or provide verification of doing so; did not sign releases and provide them to Saint Francis; did not complete a parenting class; and had attended only 30 out of 44

visits with the children. Carlton testified Mother was no closer to reintegration than when the children were placed in State custody.

After the testimony, the parties argued whether Mother had rebutted the presumption under K.S.A. 38-2271(a)(5) that she was unfit because she had substantially neglected or willfully refused to carry out a reasonable plan approved by the court directed toward reintegration.

From the bench, the district court granted the motions for termination. The court did not find Mother's contention that she had completed 90 percent of her case plan tasks credible as Mother provided no proof she had completed those tasks.

The court found clear and convincing evidence Mother was unfit under K.S.A. 38-2269(b)(3), (b)(5), (b)(7), (b)(8), and (c)(3). The court also found Mother had not rebutted the presumption she was unfit under K.S.A. 38-2271(a)(5). The court found Mother's continued drug use led to her incarcerations, "which made her unable to maintain the stability" to meet the needs of the children, and Mother's unfitness was unlikely to change in the foreseeable future, noting that "it hasn't changed at all." Focusing on the children's need for permanency, the court found termination of parental rights was in the best interests of the children.

Mother appeals the termination of her parental rights to all four children. The cases were consolidated on appeal.

ANALYSIS

On appeal, Mother contends the district court erroneously terminated her parental rights based on the presumptions of unfitness set forth in K.S.A. 38-2271. She argues the record does not reflect that the court conducted the proper analysis under K.S.A. 60-414

6

for applying a presumption of unfitness under K.S.A. 38-2271, though Mother remembers that the court stated K.S.A. 60-414(a) was to be used to derive the presumption. She contends her testimony that she completed the majority of her case plan tasks adequately rebutted the presumption under K.S.A. 38-2271(a)(5) and that the burden should have shifted to the State to provide clear and convincing evidence of her unfitness. She states there was insufficient evidence of her unfitness or that termination was in the children's best interests.

The State contends that, while the record contains conflicting testimony whether Mother completed many of her case plan tasks, the district court found Mother was not credible and we cannot disturb that finding. The State argues the evidence supports the district court's application of the presumption under K.S.A. 38-2271(a)(5). And the State points out Mother fails to specifically challenge the district court's alternate finding that Mother was unfit under K.S.A. 38-2269(b) and (c). The State maintains the district court's finding of unfitness, finding that her unfitness was unlikely to change in the foreseeable future, and best-interests determination were all supported by clear and convincing evidence.

*The principles that guide us are well-established.*

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Before a parent can be deprived of such right, the parent is entitled to due process of law. But this fundamental right to parent is not without limits. *In re P.R.*, 312 Kan. 767, 778, 480 P.3d 778 (2021). Because child welfare is a matter of state concern, the state may protect children in need of care. *In re A.A.-F.*, 310 Kan. 125, 146, 444 P.3d 938 (2019).

When a child has been adjudicated to be a child in need of care, the district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

K.S.A. 38-2269(b) and (c) list nonexclusive factors the court shall consider in determining unfitness. Any one of those factors may—but does not necessarily—establish grounds for termination of parental rights. K.S.A. 38-2269(f). "[T]he court may disregard incidental visitations, contacts, communications or contributions." K.S.A. 38-2269(c).

A parent is presumed unfit by reason of conduct or condition which renders the parent unable to care for a child if the State establishes, by clear and convincing evidence, one of the circumstances listed in K.S.A. 38-2271(a). Once established, the burden "is on the parent to rebut the presumption of unfitness by a preponderance of the evidence." K.S.A. 38-2271(b).

The appellate court must be convinced, after reviewing all the evidence in the light most favorable to the prevailing party, the district court's fact-findings are "highly probable, i.e., supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

*Presumption of unfitness*

Mother is correct that the district court did not mention K.S.A. 60-414 on the record. The district court's failure to consider K.S.A. 60-414 before applying a statutory

presumption is error. But reversal is not required where the parent does not preserve the issue for appellate review by raising it before the district court. *In re J.S.*, 42 Kan. App. 2d 113, 119, 208 P.3d 802 (2009). Mother did not preserve this issue for our review.

Yet even if we did consider this issue, reversal is not required. We note that the district court said little while making its finding of the presumption of unfitness under K.S.A. 38-2271(a)(5) on the record, and its journal entries make no mention of it. But the district court made several other findings of unfitness under K.S.A. 38-2269(b) and (c). To state it plainly, even if we assumed that Mother had a winning argument on K.S.A. 38-2271(a)(5), then she would still lose her case because the district court correctly terminated her parental rights by finding Mother unfit under K.S.A. 38-2269(b)(3), (5), (7), and (8).

Mother does not specifically challenge any of those findings on appeal. Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). As discussed below, we determine that clear and convincing evidence supports the district court's determination that Mother was unfit under K.S.A. 38-2269(b) and (c). We therefore need not review the district court's invocation of the presumption of unfitness under K.S.A. 38-2271(a)(5). See *In re J.S.*, 42 Kan. App. 2d at 119; *In re A.M.*, No. 128,125, 2025 WL 1010685, at *4 (Kan. App. 2025) (unpublished opinion).

*Unfitness under K.S.A. 38-2269*

While she does not specifically address the district court's findings of unfitness under K.S.A. 38-2269(b) or (c), Mother does maintain that she completed most of her case plan tasks because she had employment; she had a home for a time; and she had been in drug treatment, mental health treatment, and parenting classes.

The district court found Mother was not credible and gave reasons for its determination, i.e. that Mother submitted no proof of her completion of her case plan tasks. We cannot disturb the district court's credibility finding because appellate courts do not pass on the credibility of witnesses. *In re Adoption of Baby Girl G.*, 311 Kan. at 806.

Even taking Mother's testimony as true, at the time of the termination hearing Mother had no residence; no job; had not completed drug treatment; had not completed parenting classes; had not passed beyond supervised visitation; and was headed to prison for at least seven months. When we view the evidence in the light most favorable to the State, we find the district court's fact-findings are "highly probable, i.e., supported by clear and convincing evidence." See 311 Kan. at 806.

The district court found Mother was unfit because her use of narcotic or dangerous drugs rendered her unable to care for the children. See K.S.A. 38-2269(b)(3). It was undisputed that Mother refused inpatient drug treatment and continued using methamphetamine during the pendency of these cases while on probation for felony drug convictions which led to periods of incarceration and ultimately the revocation of her probation.

Mother was also found unfit because she was convicted of a felony and imprisoned. See K.S.A. 38-2269(b)(5). Mother admitted she was headed to prison in her felony drug case. This was a significant negative factor because any progress Mother made on her case plan was thwarted by the further delay her upcoming incarceration would bring to reintegration with the children after they had already been in out-of-home placement for so long.

Another reason Mother was unfit was because reasonable efforts by SFM failed to rehabilitate the family. See K.S.A. 38-2269(b)(7). The statute requires *reasonable*, not *effective*, efforts by the agency to rehabilitate the family. The parent must exert some

10

effort. *In re M.S.*, 56 Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019). The case worker testified several times she had attempted to assist Mother with the case plan, but Mother was not receptive. It was the district court's role to weigh Mother's testimony against the testimony of the case worker, not ours. See *In re Adoption of Baby Girl G.*, 311 Kan. at 806. Mother admitted SFM was not responsible for her methamphetamine use or her prison sentence.

Finally, Mother was found unfit because she exhibited a lack of effort to adjust her circumstances, conduct, or condition to meet the needs of the children and she failed to carry out a reasonable plan directed towards reintegration of the children. See K.S.A. 38-2269(b)(8); K.S.A. 38-2269(c)(3). Mother's continued drug use prevented her from meeting the needs of her children. She failed to complete drug treatment or develop parenting skills. The case worker testified Mother was uncooperative, did not provide documentation she had completed case plan tasks, and was no closer to reintegration than when the case started in February 2023.

*Unfitness unlikely to change in the foreseeable future*

The district court may look to a parent's past conduct as an indicator of future behavior. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). The foreseeable future is examined from the child's perspective. That is, when assessing the foreseeable future, we must use "'child time'" as the measure. *In re M.S.*, 56 Kan App. 2d at 1263; see *In re N.A.C.*, 299 Kan. 1100, 1106, 329 P.3d 458 (2014). The Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., recognizes that children and adults have different perceptions of time and that different perception typically requires a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d at 1263-64. For instance, a month or a year seems considerably longer for a child than it would for an adult. 56 Kan. App. 2d at 1263. "[C]hildren have a right to permanency within a time

11

frame reasonable to them." *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

In this case, the children had been removed from Mother's care in February 2023. At the time of the hearing, the children had already been in out-of-home placement for 17 months. Another factor separating their reunion was Mother's failure to remain crime-free. She had recently been ordered to serve 13 months in prison. When Mother is eventually released from prison, she would have to begin from the ground up in terms of reintegration with the children. Considering the evidence in the light most favorable to the State, a rational fact-finder could have found it highly probable that Mother's conduct or condition of unfitness was unlikely to change in the foreseeable future under K.S.A. 38-2269(a).

*Best interests of the children*

After making a finding of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 38-2269(g)(1). "[T]he district court is in the best position to make findings on the best interests of the [children]." *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010).

We review the best-interests determination for abuse of discretion. The district court abuses its discretion if no reasonable person would agree with the court or the court made a factual or legal error. "While a court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination depends on a preponderance of the evidence." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021).

Mother fails to support an assertion that termination of her parental rights was not in the best interests of her children. An issue not briefed is deemed waived or abandoned. *In re Adoption of Baby Girl G.*, 311 Kan. at 803. Even if Mother had not abandoned this issue, the district court did not abuse its discretion.

The district court found that Mother had continued to abuse drugs, had been in and out of jail, had not made progress toward reintegration, and would not be available to provide a stable home for the children because she had been convicted of a felony and was on her way to prison for some period of time. The district court reasoned that the children loved their mother, but they deserved permanency. It was not fair for them to just remain in limbo when Mother was making no progress, all while being confined to prison for the next year of the children's lives. We find that a reasonable person could agree with the district court's finding that terminating Mother's parental rights was in the best interests of the children.

Affirmed.